761 P.2d 1225

Elias Roberto LOPEZ, as personal representative of the Estate of Eda Lopez, deceased, and as conservator of the Estate of Robert Diaz Lopez, Steven Elias Lopez, and Juanita Esmeralda Lopez, the minor children of Eda Diaz Lopez, deceased, and Elias Roberto Lopez, Plaintiff–Appellant,

v.

Jeffrey Frank LANGER and Frank Langer, Defendants–Respondents.

No. 16781.

Supreme Court of Idaho.

Sept. 8, 1988.

E. Lee Schlender, Hailey, for plaintiff-appellant.

Quane, Smith, Howard and Hull, Boise, for defendant-respondent Frank Langer. Terry B. Spencer, argued.

Coleman, McIntyre & Ritchie, Twin Falls, for defendant-respondent Jeffrey Frank Langer. John S. Ritchie appeared.

HUNTLEY, Justice.

Elias Roberto Lopez, individually and as personal representative of the estate of Eda Lopez, deceased; and as conservator of the estate of their children, appeals the trial court's entry of final judgment pursuant to a jury verdict finding only defendant Jeff Langer negligent and partially liable for the death of Eda Lopez, which occurred after she was struck by a vehicle driven by Jeff. Jeff's father, Frank, was the titleholder of the vehicle which struck Mrs. Lopez, but was found by the jury not to be "the owner" of the vehicle for purposes of extending tort liability under the theory of negligent entrustment. Lopez asserts the trial court erroneously instructed the jury on that issue. Lopez also contends that the jury verdict was inconsistent in that the jury specifically found that Frank Langer was a proximate cause of Eda Lopez' death, yet did not ascribe any percentage of causation to him when they totaled their negligence assessments. Finally, Lopez appeals as prejudicial error the trial court's failure to strike certain portions of defense counsel's closing argument wherein Lopez contends defense counsel violated the prohibition against "golden rule" arguments, by asking the jury to place themselves in the position of defendant Frank Langer.

In December 1981, Jeff Langer struck and killed Eda Lopez, a pedestrian. Jeff Langer was nineteen years old at the time of the accident, and had a lengthy record of traffic violations and convictions, including driving under the influence. At the time of the accident, the registration of the vehicle which hit Mrs. Lopez was in the name of Jeff's father, Frank Langer. The record indicates that Frank purchased the vehicle for Jeff with Jeff's money; the vehicle was maintained by Jeff and was, at all times, under Jeff's control. Frank Langer testified that, several months prior to the death of Eda Lopez, he endorsed, or "signed-off" on, the title to the vehicle which killed Mrs. Lopez, and delivered that title to his ex-wife, with whom Jeff was living. Frank's ex-wife did not register the vehicle in her name after receiving the title. Of this transfer, Frank testified that he was oper-

ating on the advice of his attorney, so that he could transfer "all responsibility, ownership, whatever it took. I felt that I was under the circumstances, giving her the car, which was Jeff's car."

During trial, Lopez sought a directed verdict that Frank Langer was the owner of the vehicle which struck Mrs. Lopez for purposes of extending tort liability. The trial court refused to direct a verdict and instead gave Instruction No. 31, defining "ownership" for purposes of liability under the theory of negligent entrustment, which read:

> Ownership of a motor vehicle may involve more than mere "naked legal title." It includes possession or the right to exercise dominion and control over the motor vehicle.

Instruction No. 32 further provided that Frank could not be found to have negligently entrusted his vehicle to Jeff unless he "owned" the vehicle.

During closing argument, defense counsel asked the jury to place themselves in the same position as Frank Langer with regard to Frank's alleged transfer of title:

> Frank did what was reasonable under the situation, what his attorney had told him to do. And I think that sometimes it is helpful if you put yourself in the same shoes as the party that's doing something ... Anyway, what would you have done in the same situation?

Counsel for Lopez objected to this line of argument, asserting that it was a violation of the prohibition against "golden rule" argument.

The jury returned a special verdict which found Jeff Langer a proximate cause of the accident contributing to 75% of the causation. The jury found Eda Lopez a proximate cause of the accident contributing 25% to causation. Finally, the jury found Frank Langer to be a proximate cause of the accident, but ascribed 0% causation to him. The jury further found that Frank was not the "owner" of the vehicle which killed Mrs. Lopez, and that he had not "negligently entrusted" the vehicle to Jeff.

There are three issues before us on appeal: (1) Whether the trial court erred in failing to direct a verdict in favor of plaintiff on the "ownership" issue; (2) whether the trial court erred in failing to resolve any conflict in the jury verdict pursuant to I.R.C.P. 49(a); and (3) whether the trial court erred in allowing defense counsel to use a "golden rule" argument in its closing. We address each issue in turn.

## "OWNERSHIP" FOR PURPOSES OF NEGLIGENT ENTRUSTMENT

An owner or other person in control of a vehicle and responsible for its use may be held liable for damages resulting from use of the vehicle by another under the theory of negligent entrustment, where such person knew or should have known that such use may create an unreasonable risk of harm to others. *Kinney v. Smith,* 95 Idaho 328, 508 P.2d 1234 (1973). Typically, the person who entrusts a vehicle is its title owner. However, the paramount requirement for liability under a theory of negligent entrustment is whether or not the defendant had a right to control the vehicle.

> Although the negligent entrustment theory may apply where one who has the right to control the car permits another to use it in circumstances where he knows or should know that such use may create an unreasonable risk of harm to others, it does not apply when the right to control is absent.

*Mills v. Continental Parking Corporation,* 475 P.2d 673, 674 (Nev.1970). Similarly, a person may be in control of a vehicle, for purposes of negligent entrustment, even though the person does not own it. *Mejia v. Erwin,* 726 P.2d 1032 (Wash. App.1986).

Rigid and formalistic conceptions of ownership based upon the issuance of certificates of title are disfavored by the courts. In *Pacific Insurance Co. v. Oregon Auto Ins. Co.,* 490 P.2d 899 (Hawaii 1971), despite the existence of a statute providing that a transfer of a motor vehicle registration will be ineffective "for any purpose" until the city and county treasurer has issued a new certificate of registration, an attempted transfer (where the treasurer

had not issued new certificates) was nonetheless held effective for purposes of averting civil liability for the negligent operation of a vehicle, as the purported seller had surrendered physical possession and control of the automobile.

In *Mejia, supra,* the court affirmed a grant of summary judgment to a defendant father whose credit card had been used to assist his son in renting an automobile. The son was killed while driving the vehicle, and his passenger, the plaintiff, sued under the theory of negligent entrustment. The record revealed that the son had been dropped from his father's insurance policy years earlier for numerous traffic violations.

Under those facts, the court held:

[T]here are no facts showing that [father] *entrusted* a vehicle to [son]. The facts reveal, rather, that [father] was simply lending his credit to [son] to assist him in renting a replacement automobile. The fact that the automobile was rented in [father's] name does not alter the true nature of this transaction—a mere accommodation. (Emphasis in original).

*Mejia,* 726 P.2d at 1034.

■ The record in this case conclusively shows that Frank did not possess any right of possession or control over the vehicle which killed Eda Lopez. Although Frank paid for the vehicle (using Jeff's money), the nature of this transaction is, as in *Mejia,* little more than "a mere accommodation."

Lopez argues that various provisions in Idaho's Motor Vehicle Title Act, I.C. § 49–401 et seq., provide that, as title owner of the vehicle which killed Eda Lopez, Frank is liable for the injuries. Specifically, Lopez cites to I.C. § 49–401(e), which defines "owner" as the person with legal title:

(e) "Owner." A person who holds the legal title of a vehicle or in the event a vehicle is subject to an agreement for the conditional sale or lease thereof . . . then such conditional vendor or leasee or mortgagor shall be deemed the owner for the purpose of this chapter.

Additionally, Lopez cites to I.C. § 49–404, which further provides that no right or title in a vehicle exists absent possession of a certificate of title:

49–404. Issuance of certificate of title requisite to acquisition of title—waiver or estoppel.—Except as provided in sections 49–403, 40–412, 49–413, 49–414, and 49–416, no person acquiring a motor vehicle from the owner thereof, whether such owner be a dealer or otherwise, shall hereafter acquire any right, title, claim or interest in or to said motor vehicle until he shall have issued to him a certificate of title to said motor vehicle, nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or an assignment of such certificate of said motor vehicle for a valuable consideration.

■ Lopez argues that these code sections indicate that the certificate of title is determinative regarding questions of ownership. However, as already explained, it is not mere title ownership which gives rise to liability under the theory of negligent entrustment—it is the right to possess and control the vehicle in question. Indeed, I.C. § 49–1404 recognizes that more than mere legal title is necessary to impose tort liability for the negligent operation of a vehicle "owned" by another:

49–1404. Owners tort liability for negligence of another—subrogation.—(1) Responsibility of owner for negligent operation by person using vehicle with permission—imputation of negligence. Every owner of a motor vehicle is liable and responsible for the death of or injury to a person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same *with the permission, expressed or implied,* of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages . . . . (Emphasis added).

I.C. § 49–1404 predicates any liability upon the giving of permission, express or implied, to use the automobile. No meaning-

ful permission can be given by one without the right to control, or in possession of, the vehicle. As already stated, the record is devoid of any indicia that Frank had any right to control the vehicle in question.

In *Spindle v. Reid*, 277 A.2d 117 (D.C.Ct. App.1971), the court construed a Motor Vehicle Safety Responsibility Act similar to I.C. § 49–1404. In *Spindle*, the defendant was the title owner, and the son the sole operator, of an automobile involved in an accident. The defendant had taken title to the vehicle to enable her son to obtain financing for the car. Payments on the vehicle were made by the son, and he had full control and use of the car. After an accident resulting in injuries to a third party, defendant was sued for negligent entrustment. The court denied liability:

> [T]he purpose of the statute was to place the liability upon the person in a position immediately to allow or prevent the use of the vehicle and to do so by giving a lawful and effective consent or prohibition to its operation by others. The object was to control the giving of consent to irresponsible drivers by the one having that power rather than to impose liability upon one having a naked legal title with no immediate right of control.

*Spindle*, 277 A.2d at 119. We adopt the rationale used in *Spindle, supra.* It would make no sense, and serve no purpose, to hold one liable for negligent entrustment who has no control over, and no ability to prevent, irresponsible driving.

 Moreover, even though Frank could not be held liable under these facts were he still title owner at the time of the accident, in this case, Frank did all that was reasonably possible to divest himself of title ownership of the vehicle. Prior to the accident, Frank had endorsed the certificate of title and delivered same to his ex-wife. I.C. § 49–403 requires of a seller no more than what he did.

> I.C. § 49–403. Delivery of certificate of title upon sale or disposition—reassignment by dealers.—No person shall hereafter sell or otherwise dispose of a motor vehicle without delivery to the purchaser or transferee thereof a certificate of title with such assignment thereon as may be necessary to show title in the purchaser....

And further, although I.C. § 49–404 does explicitly provide that issuance of a certificate of title is required for acquisition of title, that statute places the burden of acquiring a certificate of title upon the buyer—not the seller. In short, Frank had done all that was required to effect a legal transfer of his title in the vehicle prior to the accident.

Lopez cites to *Slayton v. Zapp*, 108 Idaho 244, 697 P.2d 1258 (Ct.App.1985), wherein the Court of Appeals determined that the trial court erred in determining that a third-party claimant was the owner of the vehicle subject to attachment, because no certificate of title had yet been issued to claimant. The court relied upon I.C. § 49–404, which requires issuance of a certificate of title prior to acquisition to any right or interest in a vehicle. The notice provisions of I.C. § 49–404 were specifically designed to apply in creditor attachment proceedings, as was the case in *Slayton, supra.* The holding in that case provides no guidance in a negligent entrustment situation.

The trial court correctly instructed the jury on this issue and properly denied the motion for directed verdict.

## THE JURY VERDICT

Lopez alleges the trial court erred in failing to resolve an alleged conflict in the jury's responses to the special verdict, pursuant to I.R.C.P. 49(a).[1]

---

1. I.R.C.P. 49(a) reads:
 **Rule 49(a). Special verdicts and interrogatories—Special verdict.**—The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to

■ An appellate court has a duty to attempt to reconcile a jury's answers to interrogatories in an special verdict form based upon the evidence and the instructions given, and where there is a view of the case that makes the jury's answers consistent, it must be resolved in that way. *Lonardo v. Litvak Meat Co.*, 676 P.2d 1229, 1231 (Colo.App.1983). Further, an appellate court must review the evidence most favorable to the prevailing party below and draw all reasonable inferences in its favor. *McBride v. Ford Motor Co.*, 105 Idaho 753, 673 P.2d 55 (1983). The jury, in its answer to Question No. 3, found that Frank Langer was not the "owner" of the vehicle in question. In its answer to Question No. 4, the jury found that Frank Langer did not negligently entrust the vehicle to Jeff. In its answer to Question No. 5, the jury did find that the negligence of Frank Langer was a proximate cause of the accident, but in its answer to Question No. 6, the jury ascribed zero percent causative negligence to Frank Langer. In its answers to Questions 3, 4 and 6, the jury was consistent. It is only the answer to Question No. 5, where the jury found Frank a proximate cause of the accident, which diverges from the general thrust of the verdict. When viewing the answers as a whole, as we must, the cumulative message conveyed by this jury seems clear. In its responses to *specific* questions regarding ownership, negligent entrustment and specific percentages of causation, the jury absolved Frank of responsibility. Although proximate cause is a concept which denotes responsibility, the jury's finding to Question No. 5 is vague and fails to explain in what manner Frank was a proximate cause of the accident.

In view of the jury's *specific* findings regarding the *specific* instances in which Frank could have been found negligent, and reviewing the answers in a way which resolves them in a consistent manner, we

conclude that a reasonable construction of the jury's meaning in answering Question No. 5 would be that the jury found Frank to be a proximate cause of the accident in some manner apart from, and irrelevant to, the theories of liability presented at trial. In short, the jury's answers to Questions 3, 4, and 6 completely determined the issue of Frank's liability. And, "where there is one answer which completely determines the liability of the defendant, then other inconsistent answers should be stricken." *Dahl v. K–Mart*, 176 N.W.2d 342, 345 (Wis.1970). The trial court did not err by failing to determine that the jury verdict was fatally flawed.

## THE "GOLDEN RULE" ARGUMENT

■ The language objected to by Lopez as a violation of the prohibition against "golden rule" argument is as follows:

> Frank did what was reasonable under the situation, what his attorney had told him to do. And I think that sometimes it is helpful if you put yourself in the same shoes as the party that's doing something ... Anyway, what would you have done in the same situation?

The above-mentioned argument centered on the issue of whether Frank had effectively transferred legal title of the vehicle prior to the accident. The argument asked the jury to ascertain the reasonableness of Frank's actions. We hold that the "golden rule" argument is only appropriate when used to ask the jury to assess the reasonableness of a party's actions by relying upon their own common sense and life experiences. The "golden rule" argument is never appropriate when used to influence the damage award. Our holding is in accord with the majority of courts which have decided this issue.

The "Golden rule" argument is uniformly prohibited where it is used to inflame the jury and encourage an increased damage award. *Spray–Rite Service Corp. v. Mon-*

enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the

jury. As to an issue omitted without such demand the court may make a finding; or if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

*santo Co.,* 684 F.2d 1226, 1242, (7th Cir. 1982); *Ivy v. Security Barge Lines, Inc.,* 585 F.2d 732, 741 (5th Cir.1978), reversed on other grounds, 606 F.2d 524 (5th Cir. 1979) (en banc) cert. den., 446 U.S. 356, 100 S.Ct. 2927, 64 L.Ed.2d 815, reh. den., 448 U.S. 912, 101 S.Ct. 27, 65 L.Ed.2d 1173 (1980). Typically, in such situations, the plaintiff's attorney will ask the jury members to place themselves "in the shoes of the plaintiff" by asking them to question themselves as to how much they would wish to be paid to endure the damage the plaintiff has suffered. Such argument "is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Ivy, supra* at 741.

However, a majority of courts also hold that "golden rule" argument is appropriate when used by defense counsel to ask the jury to assess the reasonableness of a defendant's action. *Stokes v. Delcambre,* 710 F.2d 1120 (5th Cir.1983); *Burrage v. Harrell,* 537 F.2d 837 (5th Cir.1976); *Duerden v. PBR Offshore Marine Corp.,* 471 So.2d 1111 (La.App.1985). But see, *Miku v. Olmen,* 193 So.2d 17 (Fla.App.1966), cert. den. (Fla.), 201 So.2d 232 (Fla.1967).

Recently, the rationale we rely on was expressed well in *Shaffer v. Ward,* 510 So.2d 602 (Fla.App.1987). Interpreting the holding in *Miku, supra* as applying only to prohibit "golden rule" argument regarding damages by both plaintiff's and defense counsel, the court proceeded to hold admissible comments made by defense counsel regarding the reasonableness of defendant's actions.

> The unobjected-to comments made by defendant's counsel in this case were not in any way directed to damages. Rather, ... they were an attempt to ask the jury to use their common, everyday experience in deciding the case. As such, the comments do not constitute a "golden rule" argument and the trial court improperly granted a new trial on this basis.

---

**2.** As aptly stated in *Miku, supra,* "... We believe ... that defendants should do unto plaintiffs as defendants would have plaintiffs do unto the

*Shaffer,* 510 So.2d at 603. We will not quibble over semantic distinctions of whether only arguments related to damages are technically "golden rule" arguments, or whether all arguments which ask the jury to place themselves "in the shoes of" either plaintiff or defendant can be termed "golden rule" arguments. It is sufficient to hold, as we do, that when such arguments are used to influence a jury's award of damages, they will not be permitted. However, where such arguments merely appeal, in a moderate manner, to the jury's common sense by asking them to ascertain the reasonableness of a defendant's actions (or a plaintiff's actions)[2] in the context of the case, they will be permitted. Accordingly, the trial court did not err in failing to strike the "golden rule" portion of the defense counsel's closing argument and the closing argument did not contain reversible error.

The verdict and judgment are affirmed.

Costs to respondent. No attorney fees on appeal.

BAKES, BISTLINE and JOHNSON, JJ., concur.

SHEPARD, C.J., concurs in the result.

---

defense." *Miku,* 193 So.2d at 18. (Quoted with approval in *Shaffer,* 510 So.2d at 603, fn. 1.)