836 P.2d 518

**BASTERRECHEA DISTRIBUTING, INC., an Idaho corporation, Plaintiff–Appellant–Cross Respondent,**

**and**

**Unigard Security Insurance Company, a foreign corporation, Plaintiff,**

**v.**

**IDAHO STATE BANK, an Idaho banking organization, Defendant–Respondent–Cross Appellant.**

No. 18961.

Supreme Court of Idaho.

June 17, 1992.

Rehearing Denied Sept. 30, 1992.

Webb, Pedersen & Webb, Twin Falls, for appellant. Lloyd J. Webb, argued.

Elam, Burke & Boyd, Boise, for respondent. Todd J. Wilcox, argued.

BAKES, Chief Justice.

Basterrechea Distributing, Inc., appeals from the trial court's judgment on special

verdict which awarded $2,798.34 to Basterreachea and Unigard Insurance Co., for a forged check drawn against Basterrechea's checking account and paid by Idaho State Bank. Idaho State Bank cross-appeals from the same judgment. We affirm.

In 1986 and 1987, Basterrechea Distributing, Inc., (Basterrechea), lost approximately $200,000 through the forgery of several checks by one of its employees. Basterrechea filed a claim on its "Special Multi–Peril" insurance policy with Unigard Insurance Company (Unigard) for the loss and was paid $96,117.00 by Unigard. Action was then brought by Basterrechea and Unigard against Idaho State Bank (ISB) on the basis that ISB wrongfully honored the forged checks.

A partial summary judgment was granted on two of the checks which were determined to be barred by the statute of limitations. However, the remainder of the claims were tried to a jury. Basterrechea and Unigard claimed that ISB wrongfully paid $186,340.49 on seventy-one forged checks. At the conclusion of the trial, the jury returned a special verdict finding the bank liable on only one check in the amount of $2,798.34. The trial court entered judgment on the special verdict for that amount.

Both Basterrechea and Unigard moved for judgment notwithstanding the verdict, additur, or new trial. These motions were denied by the trial court. Basterrechea and Unigard then filed this appeal and ISB filed a cross-appeal. Unigard was later dismissed from the appeal by stipulation of the parties.

I

On its appeal, Basterrechea essentially raises two issues.[1] The first issue involves the trial court's denial of one of Unigard's requested jury instructions. In reviewing jury instructions, this Court's task is to determine whether the instructions, when considered as a whole and not individually, fairly and adequately present the issues and state the applicable law. *Sherwood v. Carter*, 119 Idaho 246, 805 P.2d 452 (1991); *Roll v. Roll*, 115 Idaho 797, 770 P.2d 806 (1989). In addition, this Court has stated that "[t]he refusal to give a particular requested instruction is not erroneous where the substance of the proposed instruction is covered elsewhere in the instructions given." *McBride v. Ford Motor Co.*, 105 Idaho 753, 760, 673 P.2d 55, 62 (1983).

In this case, Basterrechea indicates that it was error for the trial court not to give Unigard's Requested Instruction No. 20. That instruction read as follows:

The negligence, if any, on the part of the bank customer may not be considered if the bank failed to utilize ordinary care in paying the checks.

However, the substance of this instruction was covered by given instruction No. 29 which stated:

1. When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the stat[e]ment and items to discover his unauthorized signature or any alteration on

---

1. Basterrechea appeals from the judgment on special verdict, the denial of its post trial motions, and from a supplemental judgment for costs and attorney fees in favor of ISB. However, Basterrechea's brief in support of its appeal does not delineate any specific issues regarding the trial court's orders from which it appeals. The brief only sets forth a series of questions which are used in an analysis of the law applicable to this case. There are two arguments presented by Basterrechea which this Court can identify as issues and to which ISB has responded. Therefore, our review of the trial court's orders is limited to these two issues. *See Sun Valley Shopping Center, Inc. v. Idaho Power*, 119 Idaho 87, 93, 803 P.2d 993, 999 (1991) ("[W]e will not review the actions of a trial court, unless the action has been listed as an issue on appeal, especially where no authorities are cited and no argument is contained in the appellate briefs. I.A.R. 35(a)(4) (1987); *State v. Hoisington*, 104 Idaho 153, 159, 657 P.2d 17, 23 (1983).").

an item and must notify the bank promptly after discovery thereof.

2. If the bank establishes that the customer failed with respect to any item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank

(a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for. a reasonable period not exceeding fourteen (14) calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

3. *The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).* (Emphasis added).

Instruction No. 29 is a verbatim quote from I.C. § 28-4-406, which applies in this case. In oral argument, counsel for appellant acknowledged that Unigard's Requested Instruction No. 20 was covered by Paragraph 3 of given Instruction No. 29. Accordingly, the trial court's denial of Unigard's Requested Instruction No. 20 was not erroneous.

Basterrechea's second argument on appeal involves the trial court's interpretation of the special verdict form returned by the jury. The trial court interpreted the jury's special verdict as finding "on the basis of [the] evidence presented that Defendant acted properly in paying all items with the exception of exhibit twenty-eight (28)." Basterrechea questions this interpretation based on Question No. 1 of the special verdict which asked: "Did the Defendant, Idaho State Bank, utilize ordinary care in paying the checks which the Plaintiffs claim were forged?" The jury answered this question "No." Basterrechea maintains that the jury, by answering Question

No. 1 in the negative, found that ISB did not utilize ordinary care in paying all of the checks, and consequently, the jury's $2,798.34 verdict is inconsistent with its finding in Question No. 1.

Our cases hold that if there is a way that a jury's verdict can be construed to make it internally consistent, we must do so. In *Lopez v. Langer*, 114 Idaho 873, 878, 761 P.2d 1225, 1230 (1988), this Court stated that it "has a duty to attempt to reconcile a jury's answers to interrogatories in [a] special verdict form based upon the evidence and the instructions given, and where there is a view of the case that makes the jury's answers consistent, it must be resolved in that way." The jury's $2,798.34 verdict can be construed in a manner to make it consistent with its answer to Interrogatory Question No. 1.

First, we note that the language of the special verdict was requested by the plaintiff Unigard, and counsel for Basterrechea specifically stated at the jury instruction conference that: "We find the jury verdict form acceptable." Therefore, Basterrechea cannot now complain of the form of the special verdict. *Barlow v. International Harvester Co.*, 95 Idaho 881, 890, 522 P.2d 1102, 1111 (1974) ("Failure to object to the form of a general [or special] verdict at the time of its submission of reception constitutes a waiver of the right to do so."); *Anderson v. Blackfoot Livestock Commission Co.*, 85 Idaho 64, 375 P.2d 704 (1962). Additionally, the special verdict form cannot be read in isolation; the form must be construed as a whole. *Lopez v. Langer, supra.*

Viewing the entire verdict together, the trial court did not err in concluding that the verdict was consistent. Interrogatory Question No. 2 submitted to the jury asked: "Please identify by date, check number, and amount each check which was forged and which the bank did not have authority to pay." The jury identified only Exhibit No. 28 which was check number 15507 written for the amount of $2,798.34. Since it was not disputed that the signatures on all seventy-one checks were forged, the most reasonable interpretation of Interrog-

atory Question No. 1, read together with Interrogatory Question No. 2, was that the jury concluded that ISB only failed to exercise ordinary care in paying Exhibit No. 28. This interpretation is supported by Interrogatory Question No. 4, which asked: "Please set forth the amount of damages sustained by Plaintiffs, if any." The jury inserted "$2,798.34" which is the amount of Exhibit No. 28 referred to in Interrogatory No. 2.

■ The trial court's interpretation is also supported by the evidence presented to the jury at trial. That evidence showed that prior to the forgeries the responsibility for reconciling Basterrechea's corporate checking account rested in someone other than the person primarily responsible for writing checks. In addition, an independent accountant conducted monthly reviews of Basterrechea's books, updated its general ledger and issued an operating statement once a month. This accounting system would have prevented these forgeries from going undetected. However, in August of 1986, this accounting system was abandoned. Basterrechea hired Sonia Branch who became Basterrechea's "full-charge" bookkeeper. Mrs. Branch was allowed to write checks either jointly or by herself, depending on the amount. Mrs. Branch was also responsible for reconciling the corporate checkbook and for maintaining the company's general ledger. Mrs. Branch's work was not independently reviewed by anyone else. She was therefore placed in a position to intercept monthly bank statements, conceal or remove forged instruments and alter the general ledger accordingly.

In addition to the changes in the accounting system which made it easier for the forgeries to go undetected, there was also evidence that no other employee ever looked at any of Basterrechea's monthly bank statements which contained the forged checks. There were an estimated 101 overdrafts to Basterrechea's checking account during the time which Mrs. Branch was employed. Basterrechea was aware of many of these and had to arrange for additional funds to cover them. Yet, Basterre-chea never investigated the cause of these overdrafts for some fourteen months after the forgeries began, when they were finally discovered.

Furthermore, Dale Roth, an expert witness for ISB, testified that the signatures on the seventy-one checks were not so irregular as to warrant any further inquiry. Darlene Peterson, also an expert witness for ISB, testified to the same effect:

Q. I'd like to ask you, based on your training and experience in banking and signature filing and sight verification of checks, whether you have an opinion as to whether the Art Nicholson signatures shown in Exhibits 2 through 72 are sufficiently irregular that they would have been detected by a person filing checks in the ordinary course of business under a system such as the Idaho State Bank employs.

A. No, they would not have been detected.

Q. And what is the basis of that opinion?

A. There is just not an irregular part of the signature that just says, "Pull me out and check me."

Later on cross-examination, Mrs. Peterson did testify that Exhibit No. 28 was sufficiently irregular and should have been caught by ISB and this testimony was emphasized by Unigard's counsel in closing argument. The jury found the bank liable on Exhibit No. 28. Viewing the evidence most favorably to support the jury's verdict, which our cases say we must do, there was substantial evidence that Basterrechea was negligent, and that ISB used "ordinary care" as provided in I.C. § 28–4–406(3), except as to Exhibit 28, the check for $2,798.34. *Parker v. Engle*, 115 Idaho 860, 863, 771 P.2d 524, 527 (1989) ("A basic tenet of appellate review is that on appeal the evidence in the record is to be construed most favorably to the party which prevailed below."). The evidence supports the trial court's interpretation that the jury found that ISB failed to exercise ordinary care with respect to Exhibit No. 28 only. As to the remainder of the checks, the evidence supports the finding that ISB did

exercise ordinary care. As such, Basterrechea's negligence precluded it from asserting the unauthorized signatures on all the checks except Exhibit No. 28.

## II

■ ISB also filed a cross-appeal from the judgment on special verdict entered by the trial court. ISB maintains that under I.C. § 28–3–406,[2] Basterrechea cannot recover on any of the forged checks due to its "pre-forgery" negligence and because ISB paid the checks in good faith and in accordance with reasonable commercial standards. Instruction No. 22, in effect, instructed the jury that the term "reasonable commercial standards" in I.C. § 28–3–406, and "ordinary care" in I.C. § 28–4–406(3), were equivalent. That instruction read as follows:

> Before you may find that the Bank in paying a check bearing a forged or unauthorized signature failed to act in accordance with reasonable commercial standards or with ordinary care, you must find that the Bank's methods and procedures of clearing and paying checks were unreasonable, arbitrary, or unfair. If the Bank in that procedure and practice complies with general custom and practice in the banking trade, you may not find that the Bank failed to act in accordance with reasonable commercial standards or with ordinary care.

Neither party has raised any issue on appeal regarding the correctness of Instruction No. 22. As indicated above, the jury found that ISB did not use ordinary care with regard to Exhibit No. 28, and there was evidence to support that finding. Accordingly, the judgment and verdict are affirmed.

2. **28–3–406. Negligence contributing to alteration or unauthorized signature.**—Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

## III

■ Finally, each party has requested attorney fees on appeal. The trial court found that ISB was the prevailing party below and awarded it attorney fees under I.C. § 12–120(3).[3] We also conclude that ISB is the prevailing party on appeal and is entitled to attorney fees under I.C. § 12–120(3). *See Perkins v. Highland Enterprises, Inc.*, 120 Idaho 511, 817 P.2d 177 (1991).

The trial court's judgment is affirmed. Costs and attorney fees on appeal to ISB.

BISTLINE, JOHNSON and McDEVITT, JJ., and REINHARDT, J. Pro Tem., concur.

3. Idaho Code 12–120(3) states:

> In any civil action to recover on [a] ... negotiable instrument, ... and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.
>
> The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes.....