# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-IA-00506-SCT

*RIG MASTERS, INC.*

*v.*

*KATIE COLENBERG, INDIVIDUALLY AND ON BEHALF OF THE HEIRS AND WRONGFUL-DEATH BENEFICIARIES OF ISAAC PEARL COLENBERG (DECEASED)*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/11/2024 |
| TRIAL JUDGE: | HON. TOMIKA HARRIS IRVING |
| TRIAL COURT ATTORNEYS: | NOAH MANASEH DRAKE |
| | OTTOWA E. CARTER, JR. |
| | WILLIAM POLK THOMAS |
| | DEONDREY RASHAD RUSSELL |
| | CARLY HAWKINSON CHINN |
| | EDDEREK LINNEL COLE |
| | RICHARD JARRAD GARNER |
| | RAY ANTHONY YOUNG, JR |
| | MARY CLARK JOYNER |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM POLK THOMAS |
| | CARLY HAWKINSON CHINN |
| | EDDEREK LINNEL COLE |
| | CHARLES ADAM BYRD |
| ATTORNEYS FOR APPELLEE: | NOAH MANASEH DRAKE |
| | RICHARD JARRAD GARNER |
| | OTTOWA E. CARTER, JR. |
| | IKEECIA LOREAL COLENBERG |
| | MARY CLARK JOYNER |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 06/11/2026 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1. Thomas Sturdivant began working for Rig Masters, Inc., in April 2022. When Sturdivant began his employment, he was enrolled in a rehabilitative program at Almost Home Behavioral Health Center. In May 2022, Rig Masters agreed to sell Sturdivant a truck that was financed by withholding funds from his paychecks.

¶2. On September 6, 2022, Rig Masters fired Sturdivant for suspected theft. On the same day, Sturdivant finished paying for the truck, and Rig Masters provided him with a notarized title to the truck. The following day, Sturdivant was arrested on a charge of theft.

¶3. On October 4, 2022, Sturdivant, driving the truck he had purchased from Rig Masters, collided with another vehicle, which resulted in the death of the other driver, Isaac Colenberg. Title to the truck was still in Rig Masters' name at the time of the accident.

¶4. On October 25, 2022, Katie Colenberg brought a wrongful-death suit against Sturdivant and Rig Masters. The complaint alleged that Rig Masters was liable under the doctrine of negligent entrustment and vicariously liable under the doctrine of *respondeat superior*. Rig Masters moved for summary judgment on both claims.

¶5. On April 8, 2024, the circuit court granted in part and denied in part the summary-judgment motion. The circuit court found that there was no issue of material fact as to the claim of *respondeat superior* because Sturdivant was not an employed by Rig Masters at the time of the accident. On the claim of negligent entrustment, the circuit court found that there were issues of material fact. The circuit court found the following facts disputed: whether

2

title of the truck transferred from Rig Masters to Sturdivant, whether Rig Masters had control of the truck, and whether Rig Masters knew or should have known that Sturdivant was allegedly undergoing treatment for substance abuse at the time Rig Masters agreed to sell him the truck and when Sturdivant began driving the truck.

¶6. On April 30, 2024, Rig Masters filed a petition for an interlocutory appeal seeking review of the circuit court's denial of summary judgment on the claim of negligent entrustment. On September 5, 2024, this Court granted Rig Masters' petition for interlocutory appeal.

**FACTS AND PROCEDURAL HISTORY**

¶7. On April 25, 2022, Rig Masters, an industrial-construction company located in Monterey, Louisiana, hired Sturdivant as a diesel mechanic. At the time, Sturdivant resided at Almost Home where he was enrolled in a rehabilitative program. In May 2022, Sturdivant agreed to purchase a Ford F-150 from Rig Masters. Rig Masters withheld $700 from each of Sturdivant's paychecks until the purchase price of $5,500 was satisfied.

¶8. On the morning of September 6, 2022, a coworker questioned Sturdivant about a missing drill, and Sturdivant admitted having taken the drill and offered to bring it back the next day. Later that morning, Richard Young, part owner and then-president of Rig Masters, called Sturdivant and other workers into a meeting concerning theft problems in the workplace. After the meeting, Young informed Sturdivant that he was fired and that he was being arrested for stealing the drill. Two deputies detained Sturdivant for a few hours in the back of a patrol car. While handcuffed in the back of the car, Young gave Sturdivant the title

3

to the truck and his final paycheck, which satisfied the remaining balance of the truck. Darlene Baker, an office manager and notary of Rig Masters, notarized the title. After being released from custody, Sturdivant went home and returned the drill the following morning. Immediately after dropping off the drill, a deputy pulled Sturdivant over and arrested him.

¶9. On October 4, 2022, Sturdivant was involved in a head-on collision on U.S. Highway 61 that resulted in the death of the other driver, Isaac Colenberg. The accident report provided that Sturdivant failed to keep in the proper lane while traveling north across a bridge, but Sturdivant disagreed and claimed that he had remained in the proper lane. The officer on the scene did not report any suspected drug or alcohol use by Sturdivant.

¶10. At the time of the accident, Sturdivant was driving the Ford F-150 that he had purchased from Rig Masters. Rig Masters failed to remove the license plate from the truck, and it was still on the truck at the time of the accident. The truck was still insured by Rig Masters at the time of the accident as well. The accident report listed Rig Masters as the owner because Sturdivant had not registered the title or changed the insurance to his name. Despite having paid for the truck and possessing the title, Sturdivant claimed that he did not own the truck; Rig Masters did. Sturdivant also claimed that he had no memory of signing the title and that his signature may have been forged. Nonetheless, Sturdivant acknowledged that it was his responsibility to switch the title into his name but that he had failed to do so because he had been arrested and lacked the funds.

¶11. On October 25, 2022, Katie Colenberg, individually and on behalf of the heirs and wrongful-death beneficiaries of Isaac Colenberg, filed a lawsuit in the Circuit Court of

4

Clairborne County against Rig Masters and Sturdivant asserting claims of negligence, infliction of emotional distress, and wrongful death. Colenberg claimed that Rig Masters should be held liable under the doctrines of *respondeat superior* and negligent entrustment.

¶12. Rig Masters failed to timely respond, and Colenberg moved for default judgment. The clerk made an entry of default against Rig Masters, and Rig Masters responded with a motion to set aside entry of default judgment, asserting that service was improper because Rig Masters' registered agent in the state was deceased. The circuit court granted Rig Masters' motion to set aside entry of default judgment.

¶13. On August 9, 2023, Rig Masters filed a motion for summary judgment. In response to the claim of *respondeat superior*, Rig Masters asserted that Sturdivant was not an employee at the time of the accident and that vicarious liability was inapplicable to former employees. Rig Masters argued that to be found vicariously liable under the doctrine of *respondeat superior*, Sturdivant must have been an employee and acting in the course and scope of his employment. Because Sturdivant was not employed by Rig Masters nor was he acting on behalf of Rig Masters, it could not be found to be vicariously liable for his actions. In response to the claim of negligent entrustment, Rig Masters asserted that it had no control over the truck after it was sold to Sturdivant. Rig Masters argued that once a vehicle is sold to the user, the doctrine of negligent entrustment is inapplicable because the seller relinquishes ownership and control of the vehicle.

¶14. On August 29, 2023, Colenberg filed a response to Rig Masters' motion for summary judgment. Colenberg argued that summary judgment was premature because more

5

information was needed before the circuit court could rule on the motion. Questioning the credibility of the testimonies of Sturdivant and Young, on which Rig Masters had relied, Colenberg asserted that additional discovery was necessary and would demonstrate genuine issues of material fact.

¶15. On September 7, 2023, Rig Masters filed a rebuttal in support of summary judgment. Rig Masters argued that summary judgment was not premature and that Colenberg had failed to establish genuine issues of material fact. Claiming that Colenberg had failed to prove that a delay in ruling on summary judgment was necessary, Rig Masters asserted that no continuance should be granted.

¶16. On November 3, 2023, Rig Masters filed a supplement to its rebuttal in support of summary judgment. In this supplement, Rig Masters furthered its argument against the claim of negligent entrustment, asserting that ownership alone was insufficient to subject it to liability and that it should not be subject to penalty for Sturdivant's failure to register title in his name. Rig Masters also noted that Colenberg had failed to show that Sturdivant was employed by Rig Masters at the time of the accident, so dismissal of the claim of *respondeat superior* was unopposed.

¶17. On November 7, 2023, the circuit court entered an order of abeyance on Rig Masters' motion for summary judgment until discovery was complete. The court found that Colenberg had demonstrated that more discovery was necessary before it could reach a proper decision.

¶18. On February 7, 2024, after the close of discovery, Rig Masters filed a supplemental motion for summary judgment along with an accompanying memorandum of authorities.

Colenberg responded by filing a memorandum brief and an amended and supplemental response in opposition to Rig Masters' motion for summary judgment on March 29, 2024.

¶19. On April 8, 2024, the circuit court held a hearing on Rig Masters' motion for summary judgment. The circuit court granted in part and denied in part the summary-judgment motion. The circuit court found that there was no genuine issue of material fact on the claim of *respondeat superior*, so Rig Masters could not be found vicariously liable. On the claim of negligent entrustment, the circuit court found genuine issues of material fact and denied summary judgment.

¶20. On April 30, 2024, Rig Masters filed a petition for an interlocutory appeal seeking review of the circuit court's denial of summary judgment and a motion to stay pending the appeal. Colenberg filed a response in opposition to Rig Masters' motion to stay pending appeal. On May 7, 2024, the circuit court denied Rig Masters' motion to stay.

¶21. On September 5, 2024, this Court granted Rig Masters' petition for interlocutory appeal. Following this Court's decision to grant the petition, the circuit court granted Rig Masters' motion to stay pending appeal. Rig Masters' interlocutory appeal of the circuit court's decision to deny summary judgment on the claim of negligent entrustment is now before this Court.

**STANDARD OF REVIEW**

¶22. This Court reviews the denial of a defendant's motion for summary judgment *de novo*. *Lakeland Premier Women's Clinic, PLLC v. Jackson*, 426 So. 3d 1062, 1065 (Miss. 2025). The evidence is viewed "in the light most favorable to the party against whom the motion has

7

been made." ***United Emergency Servs. of Miss., Inc. v. Miller ex rel. Reed***, 414 So. 3d 66, 71 (Miss. 2025) (internal quotation marks omitted) (quoting ***Hardaway v. Howard Indus., Inc.***, 378 So. 3d 946, 951 (Miss. 2024)). "[T]he moving party bears the burden of demonstrating that no genuine issue of material fact exists." ***City of Jackson v. Maxie ex rel. M.Y.***, 412 So. 3d 1156, 1159 (Miss. 2025) (alteration in original) (internal quotation marks omitted) (quoting ***Anderson v. Wiggins***, 331 So. 3d 1, 4 (Miss. 2020)). The nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial,' and cannot merely 'rest upon the mere allegations or denials of his pleadings.'" ***Miller***, 414 So. 3d at 71 (internal quotation marks omitted) (quoting ***Williams v. City of Batesville***, 313 So. 3d 479, 482 (Miss. 2021)). "Summary judgment is mandated where the nonmoving party fails to show evidence sufficient to establish the existence of an essential element to his case." ***Sligh v. First Nat'l Bank of Holmes Cnty.***, 735 So. 2d 963, 966 (Miss. 1999) (citing ***Wilbourn v. Stennett, Wilkinson & Ward***, 687 So. 2d 1205, 1214 (Miss. 1996)).

**DISCUSSION**

¶23. Mississippi courts define the doctrine of negligent entrustment as:

> One who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

***Id.*** at 969 (quoting Restatement (Second) of Torts § 390). Section 390 of the Second Restatement is a "special application" of Section 308, which provides:

> It is negligence to permit a third person to use a thing or to engage in an

8

activity which is *under the control* of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308 (1965) (emphasis added); Restatement (Second) of Torts § 390 cmt. b (1965).[1] In ***Broadwater v. Dorsey***, which this Court relied upon in ***Sligh***, the Maryland Court of Appeals found that "[s]ections 390 and 308 are *in pari materia*, and must be read together." ***Broadwater v. Dorsey***, 688 A.2d 436, 441 (Md. 1997) (citing ***State v. Bricker***, 581 A.2d 9, 12 (Md. 1990)); *see* ***Sligh***, 735 So. 2d at 969. This Court also finds that Sections 390 and 308 are *in pari materia* and should be read together. *Cf.* ***Brown v. State***, 102 So. 3d 1087, 1091 (Miss. 2012) (Statutes that are *in pari materia*, on the same subject, should be read harmoniously together. (citing ***Leasy v. Zollicoffer***, 389 So. 2d 1378, 1380 (Miss. 1980)). Consistent with this harmonious interpretation of Sections 390 and 308, this Court has held that the defendant's right to control the chattel is essential for a finding of negligent entrustment. ***Sligh***, 735 So. 2d at 969 ("The paramount requirement for liability under the theory of negligent entrustment is whether or not defendant had a right to control the vehicle." (internal quotation marks omitted) (quoting ***Broadwater***, 688 A.2d at 442)). This Court has also required that the harm that resulted from the use of the chattel must have a "direct correlation" to the conduct involving an unreasonable risk of harm which the defendant knew or should have known. ***Sullivan v. Tupelo Furniture Mkt., Inc.***

---

[1]"The words 'under the control of the actor' are used to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity." Restatement (Second) of Torts § 308 cmt. a (1965).

*(Guardianship of Garvin)*, 127 So. 3d 197, 201 (Miss. 2013).

¶24.  Thus, to make a prima facie claim of negligent entrustment, the plaintiff must prove:

> (1) that the defendant supplied a third party with the chattel in question for the use of the third party; (2) that the supplier of the chattel knew or should have known that the third party would use the chattel in a manner involving an unreasonable risk of harm; and (3) harm resulted from the use of the chattel.

*Penn-Star Ins. Co. v. Thompson*, 368 So. 3d 1245, 1249 n.3 (Miss. 2023) (quoting *Bullock Bros. Trucking Co. v. Carley*, 930 So. 2d 1259, 1262 (Miss. Ct. App. 2005)).  Further, this Court finds additional requirements: (4) that the chattel was under the control of the supplier, *Sligh*, 735 So. 2d at 969, and (5) "the conduct of which the supplier of the [chattel] was or should have been aware had a direct correlation to the cause of the [harm]." *Guardianship of Garvin*, 127 So. 3d at 201.

¶25.  To sustain a claim for negligent entrustment, Colenberg must show: (1) Rig Masters supplied Sturdivant with the truck; (2) Rig Masters knew or should have known that Sturdivant would use the truck in a manner involving an unreasonable risk of harm; (3) harm resulted from Sturdivant's use of the truck; (4) the truck was under the control of Rig Masters; and (5) the harm directly correlated with Sturdivant's conduct that created an unreasonable risk of harm of which Rig Masters knew or should have been aware.

¶26.  Here, it is undisputed that (1) Sturdivant purchased the truck from Rig Masters and that (3) harm resulted from Sturdivant's use of the truck.  Thus, the elements of negligent entrustment that are in question are: (2) whether Rig Masters knew or should have known that Sturdivant would use the truck in a manner involving an unreasonable risk of harm; (4) whether the truck was under the control of Rig Masters; and (5) whether the harm directly

10

correlated with Sturdivant's conduct that created an unreasonable risk of harm of which Rig Masters knew or should have been aware.

**Whether Rig Masters knew or should have known that Sturdivant would use the truck in a manner involving an unreasonable risk of harm.**

¶27.	This Court has previously held that "an automobile, although not usually a dangerous instrumentality, becomes one when driven by an incompetent driver." *Sligh*, 735 So. 2d at 966-67. Colenberg contends that Sturdivant had a substance-abuse problem that Rig Masters knew or should have been aware of that made him an incompetent driver.  In support of this contention, Colenberg points out that Sturdivant was living at a rehabilitation center at the time he was hired by Rig Masters and alleges that he was actively battling addiction to methamphetamine.  When Sturdivant was detained, he purportedly told the officer that he was in recovery for methamphetamine addiction, and after being detained, a glass pipe commonly used to consume methamphetamine was found in the bathroom that he had repeatedly requested to go back into.

¶28.	Colenberg contends that this case is analogous to *Savage v. La Grange*, in which the Court of Appeals found that an employer who supplied a vehicle to an employee should have been aware of the employee's substance-abuse problems that made him an unreasonable hazard to other drivers on the road.  *Savage v. LaGrange*, 815 So. 2d 485, 493 (Miss. Ct. App. 2002).  This Court disagrees.  While this case shares similarities to *Savage*, the differences are apparent.  Like this case, the supplier of the vehicle was the employer of the user of the vehicle.  *Savage*, 815 So. 2d at 488, 494.  The appellate court found that the daily contact that occurred in this employer-employee relationship was a factor for finding that the

employer should have known of the behavior that made the employee an unreasonable hazard to other drivers on the road. *Id.* at 493. There are, however, two key differences that make *Savage* distinguishable: (1) the employer was the father of the employee, and (2) the employee, the son, had a "history of hospitalizations for substance abuse, had a number of prior convictions for alcohol-related driving offenses, and . . . his driver's license was suspended at the time of the accident." *Id.* at 488-89. Here, Sturdivant did not have a record showing that he could be an incompetent driver.

¶29. Sturdivant claimed to have never been involved in a car accident before the accident at issue in this case. He also claimed that he had never been cited for reckless driving or driving while in possession of an illicit drug. While Colenberg claims that Sturdivant was battling addiction, Sturdivant refuted this claim. He claimed that he was not in recovery for methamphetamine addiction, that he had never suffered from methamphetamine addiction or any other drug addiction, that he was required to take drug tests while living in the rehabilitation center, that Rig Masters did a drug and background check on him prior to his employment, and that he was subject to drug tests while employed with Rig Masters.

¶30. Thus, the only evidence that indicates that Sturdivant had a substance-abuse problem before the sale of the truck is the fact that he was residing in a rehabilitation center when Rig Masters agreed to sell him the truck. This Court finds that this fact alone is insignificant to show that Rig Masters knew or should have been aware of Sturdivant's alleged substance abuse problem. This Court also believes that a contrary finding would be prejudicial to those who have sought recovery and would deter others from seeking recovery. While Sturdivant's

12

statement to the officer about his alleged methamphetamine addiction and the glass pipe found in the bathroom following his detainment are more suggestive of a substance abuse problem, this evidence was discovered after the truck had already been sold to Sturdivant. Thus, there is insufficient evidence to show that Rig Masters knew or should have been aware of Sturdivant's alleged substance-abuse problem that would make him an unreasonable hazard to other drivers on the road.

**Whether the truck was under the control of Rig Masters.**

¶31.    Under Section 308 of the Second Restatement, the truck would be under the control of Rig Masters if Sturdivant could only use the truck with the consent of Rig Masters and that by withholding consent, Rig Masters could prevent Sturdivant from using the truck. Restatement (Second) of Torts Section 308 cmt. a (1965).   Colenberg contends that Sturdivant's use of the truck was controlled by Rig Masters because it was given to him to get to and from work and because ownership never passed to him.  Colenberg also asserts that "[i]t is elementary that 'control' refers to legal ownership" but fails to cite any authority to support this assertion.  This Court finds that this assertion is unfounded.

¶32.    Colenberg and Sturdivant both contend that Rig Masters owned the truck at the time of the accident, but it is not ownership that must be determined, rather, control.  *See **Laurel Yamaha, Inc. v. Freeman***, 956 So. 2d 897, 903 (Miss. 2007) ("Absent the right to control, no action lies for negligent entrustment."); *see also **Lopez v. Langer***, 761 P.2d 1225, 1228 (Idaho 1988) ("[I]t is not mere title ownership which gives rise to liability under the theory of negligent entrustment—it is the right to possess and control the vehicle in question.");

*Green v. Harris*, 70 P.3d 866, 871 (Okla. 2003) ("[L]iability for negligent entrustment of a motor vehicle is not necessarily controlled by legal ownership of the vehicle."). This Court has previously refused to find the seller of a vehicle liable for negligent entrustment in both *Sligh* and *Freeman*. *Sligh*, 735 So. 2d at 970; *Freeman*, 956 So. 2d at 904. There are, however, significant differences in both *Sligh* and *Freeman* to this case. In *Sligh* and *Freeman*, the sellers were both dealerships, and the transfer of title was not a disputed issue. *Sligh*, 735 So. 2d at 965-66; *Freeman*, 956 So. 2d at 899, 905.

¶33.    Colenberg argues that this case is more similar to *Savage*. In *Savage*, the vehicle's title was in the father/employer's name at the time of the accident. *Savage*, 815 So. 2d at 492. The vehicle was also financed by a loan in the father/employer's name. *Id.* The appellate court agreed with the trial court that the father/employer "had sufficient ownership interest in the vehicle to be deemed in control and that his decision to permit his son to enjoy possession was an act of entrustment." *Id.* at 493. The appellate court found that "in the normal circumstance, proof of legal ownership of personalty would carry with it a presumption of the right of possession." *Id.* This Court, however, finds that the circumstances in this case are not normal.

¶34.    Here, Sturdivant purchased the truck and possessed both the truck and title to the truck for nearly a month after being fired. Sturdivant also acknowledged that it was his responsibility to transfer title into his name, but due to abnormal circumstances, being fired and subsequently arrested, he failed to do so. Under Mississippi law, it was Sturdivant's responsibility to transfer title into his name as well. *See* Miss. Code Ann. § 63-21-31(2)

14

(Rev. 2022) (after delivery of vehicle, new owner shall promptly apply for new certificate of title); Miss. Code Ann. § 63-21-69 (Rev. 2022) (after delivery of the vehicle, new owner must apply for a license privilege tag within seven days).[2]  Further, Rig Masters indicated its intent to relinquish control over the vehicle by emailing the insurance provider to remove the truck from its policy.

¶35.    In *Savage*, the car was titled in the father's name and financed by a loan in his name. *Savage*, 815 So. 2d at 492.  The father testified that he purchased the vehicle for his son because "his son's credit history was so poor that he could not obtain financing," but no evidence was presented that the father intended for the title to be transferred into his son's name or that the son repaid or intended to repay the father for the purchase price of the vehicle.  *Id.*  Here, Sturdivant purchased the vehicle, acknowledged that it was his responsibility to transfer title into his name, and was required by law to transfer title into his name.  *See* § 63-21-31(2); § 63-21-69.  Rig Masters also evidenced its intent to relinquish control of the truck by delivering Sturdivant the title and emailing its insurance provider to remove the truck from the policy.

¶36.    In *Savage*, while the son had possession of the vehicle, the father maintained control over it.  *Savage*, 815 So. 2d at 492-93.  In this case, no evidence was presented to show that Rig Masters "had sufficient ownership interest in the vehicle to be deemed in control." *Savage*, 815 So. 2d at 493; *see also* ***Zedella v. Gibson***, 650 N.E.2d 1000, 1003 (Ill. 1995)

_____

[2]Section 63-21-69 was amended on July 1, 2024, to extend this time period to thirty days.  Sturdivant completed purchase of the truck on September 6, 2022, before the effective date of the amendment.  *See* Miss. Code Ann. § 63-21-69 (Supp. 2025).

("[I]f the actor does not have an exclusive or superior right of control, no entrustment of the property can occur."). Sturdivant did not require Rig Masters' consent to use the truck; therefore, Rig Masters could not prevent him from using the truck by withholding consent. *See also* **Neary v. McDonald**, 956 P.2d 1205, 1210 (Alaska 1998) (ownership alone does not give rise to negligent entrustment liability because owner could not "lawfully or practically" prevent use of the vehicle); **Lopez**, 761 P.2d at 1229 ("It would make no sense, and serve no purpose, to hold one liable for negligent entrustment who has no control over, and no ability to prevent, irresponsible driving."). Sturdivant's failure to transfer title into his name does not give rise to any level of control over the truck by Rig Masters. Thus, Colenberg failed to establish that Rig Masters maintained control over the truck after Sturdivant purchased it.[3]

> **Whether the harm directly correlated with Sturdivant's conduct that created an unreasonable risk of harm of which Rig Masters knew or should have been aware.**

¶37. The final element of negligent entrustment that this Court must consider is whether Sturdivant's alleged substance abuse contributed to the accident that took Isaac Colenberg's life. Here, no evidence was presented that Sturdivant was under the influence of any illicit substance at the time of the accident. This Court has previously held that a history of substance abuse could be a basis for negligent entrustment "only if it was a proximate cause of the accident." **Guardianship of Garvin**, 127 So. 3d at 201 (citing **Davis v. Seymour**, 868 So. 2d 1061, 1064 (Miss. Ct. App. 2004)). In **Garvin**, the fifteen-year-old driver of the

---

[3]This Court acknowledges the dispute with title. Whether title was properly transferred by Rig Masters to Sturdivant is uncertain, but title is not what must be determined; control must be determined.

vehicle used illicit substances in the past, and a bottle of vodka was found in the car at the time of the accident. *Id.* at 200. But the Court found that it was undisputed that the driver was "not under the influence of alcohol or drugs (prescription or illegal) at the time of the accident." *Id.* at 201. Here, no evidence disputed the responding officer's accident report, which found no suspected drug or alcohol use by Sturdivant. Without contradicting evidence, no basis exists for a finding of negligent entrustment. *Id.* Thus, Colenberg failed to establish that Sturdivant's alleged substance abuse had any correlation to the accident.[4]

## CONCLUSION

¶38. Colenberg has failed to make a prima facie case for negligent entrustment against Rig Masters, and summary judgment should accordingly be granted. There is insufficient evidence to show that Rig Masters knew or should have known of Sturdivant's alleged substance-abuse problem, and Sturdivant had complete control over the vehicle. Even were this Court to disagree and find a dispute of material fact as to whether Rig Masters had control over the vehicle, it would still be insufficient to establish a claim of negligent entrustment because "a party cannot be liable for negligent entrustment only because he or she had the right to control the vehicle." *Id.* Without an issue of material fact that substance abuse contributed to the accident, Rig Masters' control of the vehicle and Sturdivant's alleged substance abuse are irrelevant. Thus, this Court reverses the circuit court decision

---

[4]Colenberg presented an affidavit of investigator D'Andrea Chess, one of the first responders to the accident, at the hearing for summary judgment. Chess allegedly claimed that Sturdivant was acting "sporadic" and seemed to be under the influence of drugs. The circuit court denied admission of this affidavit, and it accordingly should not be considered by this Court.

17

and remands the case to the circuit court to render summary judgment in favor of Rig Masters on the claim of negligent entrustment.

¶39.   **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**