**Michael C. HILDEBRANDT, Appellant,**

v.

**CITY OF FAIRBANKS and Robert W. Malone, Appellees.**

No. S–4960.

Supreme Court of Alaska.

Nov. 12, 1993.

Rehearing Denied Dec. 3, 1993.

Joseph L. Paskvan, Hoppner & Paskvan, P.C., Fairbanks, for appellant.

James R. Blair, Bliss Riordan, Fairbanks, for appellee, City of Fairbanks.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

### INTRODUCTION

This appeal arises out of a collision between Michael C. Hildebrandt's vehicle and a City of Fairbanks (City) police vehicle which was in pursuit of a fleeing arrestee's vehicle. Three questions are presented by this appeal: whether the superior court erred by treating the fleeing motorist as a separate party for purposes of apportionment of fault pursuant to AS 09.17.080; whether the superior court erred in ruling that Hildebrandt was comparatively negligent; and whether the superior court erred in granting summary judgment to the City in Hildebrandt's 42 U.S.C. § 1983 claim.

### FACTS

On April 18, 1990, Perry Williamson, a City police officer, stopped driver Robert Malone for a traffic stop. Williamson determined that Malone was driving on a revoked license, and attempted to place him under arrest. Malone fled in his car at a high rate of speed, and Williamson pursued him. Malone proceeded south on Peger Road and passed through the intersection of Peger Road and Mitchell Expressway on a green light, but travelling in a dangerous manner. Williamson entered the intersec-

tion on a red light and struck Hildebrandt's vehicle, which was heading east on Mitchell Expressway. At the time of the collision, Hildebrandt was traveling within the speed limit, and the light was green for his direction of travel.

The impact of the collision pushed Hildebrandt's vehicle off the Expressway. He was trapped in his vehicle in excess of one hour while efforts were made to extricate him. Hildebrandt sustained injuries to his face, right arm, abdomen, and left leg. As a result of his injuries, Hildebrandt's spleen was removed.

## PROCEEDINGS

Prior to trial the superior court made the following rulings. Summary judgment was granted in the City's favor on Hildebrandt's 42 U.S.C. § 1983 claim, which was based on the City's alleged failure to properly train its police officers with respect to vehicle pursuit policy. The superior court ruled that if the siren and emergency warning lights on Williamson's vehicle were activated prior to the collision, then Hildebrandt was comparatively negligent (negligent *per se*) in failing to yield to Williamson's vehicle. On its cross-claim against Malone, the City was granted summary judgment as to the issue of Malone's negligence, and a default judgment as to liability was entered against Malone. Also prior to trial, the City admitted that Williamson was negligent and that the City was responsible for some portion of Hildebrandt's damages.

After a non-jury trial, the superior court determined that "Hildebrandt, Williamson and Malone were all negligent and the negligence of each was a legal cause of the accident and resulting injuries sustained by Hildebrandt." The superior court further held that the City was negligent in failing to properly train Officer Williamson in proper pursuit driving. In regard to the apportionment of fault required by AS 09.-17.080, the superior court concluded that the City, Williamson, and Malone would not

be treated as a single party for purposes of apportionment, but that the City and Williamson would be treated as one.[1] Malone was allocated 60%, the City 32%, and Hildebrandt 8% of the total fault.

Based on its findings regarding liability and damages the superior court entered judgment in favor of Hildebrandt against the City in the amount of $80,503.10, and in favor of Hildebrandt against Malone in the amount of $187,936.73.

This appeal followed.

## I. DID THE SUPERIOR COURT ERR IN REJECTING HILDEBRANDT'S REQUEST THAT THE CITY, WILLIAMSON, AND MALONE BE TREATED AS A SINGLE PARTY FOR PURPOSES OF APPORTIONING FAULT?

Alaska Statute 09.17.080 mandates that the trial court apportion fault. The statute provides:

(a) In all actions involving fault of more than one party to the action, including third party defendants ... the court ... shall make findings, indicating ...

. . . .

(2) the percentage of the total fault of all of the parties to each claim that is allocated to each claimant [and defendant]. . . .

(b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault, and the extent of the causal relation between the conduct and the damages claimed. *The trier of fact may determine that two or more persons are to be treated as a single party if their conduct was a cause of the damages claimed and the separate act or omission of each person cannot be distinguished.*

(Emphasis added).

In its Memorandum Decision and Findings of Fact, Conclusions of Law, the supe-

---

**1.** Whether Williamson and the City were properly treated as one has not been made an issue on appeal.

rior court resolved the allocation issues in the following manner:

> Hildebrandt contends under *AS 09.17.-080(b)* the City, Williamson and Malone should be treated as a single party for allocation of fault. The City has admitted based on the theory of *respondeat superior* that they are liable for the conduct of Williamson.... The court finds that the City was negligent in failing to properly train Officer Williamson in proper pursuit driving. The City and Williamson should be treated as one since their conduct can not be separated. Malone's conduct is separate and apart from that of the City and Williamson, and therefore the City, Williamson, and Malone will not be treated as a single party.

Given the text of AS 09.17.080 and our review of the evidentiary record, we conclude that the superior court did not err in its refusal to treat Malone, Williamson, and the City as one party for purposes of apportionment of fault. It is abundantly clear that the acts and omissions of Malone, at all relevant times, are easily distinguishable from the acts and omissions of Williamson and the City.[2]

## II. DID THE SUPERIOR COURT ERR IN HOLDING HILDEBRANDT COMPARATIVELY NEGLIGENT?

■ In its memorandum decision the superior court made the following findings of fact relevant to the question of Hildebrandt's comparative negligence:

> Hildebrandt was negligent in not yielding to a police vehicle displaying emergency lights and sounding a siren. Hildebrandt's view of the Peger/Parks intersection was unobstructed and a reasonable man would have seen the police vehicle.

The superior court further noted:

> Prior to trial the court ruled that if Williamson was displaying emergency lights/siren, Hildebrandt would be negligent per se. The court concludes that Williamson had activated the emergency lights and siren on the vehicle he was driving. The court further concludes regardless of the prior per se ruling Hildebrandt was negligent in not seeing the police vehicle and in not yielding to it.[3]

Review of the relevant portions of the record persuades us that the superior court's findings of fact regarding Hildebrandt's comparative negligence are not clearly erroneous.[4] Thus we affirm the superior court's determination that Hildebrandt was comparatively negligent.

Viewing the evidence in the light most favorable to the City, we conclude that the record indicates that numerous witnesses observed the police vehicle's flashing emergency lights or heard its siren from different vantage points to the intersection. Additionally, there was testimony to the effect that a person in Hildebrandt's location immediately prior to the collision would have had an unobstructed view of Peger Road as he approached on the Mitchell Expressway. In regard to Hildebrandt's duty, 13 AAC 02.140(a) speaks to the man-

2. In light of the unambiguous directive of AS 09.17.080, we reject Hildebrandt's unsupported claim that "[s]ocial policy requires the treatment of the pursued and the pursuer as a single person when the failure to train is a proximate cause of the collision."

3. As indicated above, the superior court allocated 8% of the total fault to Hildebrandt pursuant to AS 09.17.080.

4. Findings of fact will not be set aside unless clearly erroneous. *Parker v. Northern Mixing Co.,* 756 P.2d 881, 887 n. 11 (Alaska 1988). A finding of fact is clearly erroneous if we are left with the definite and firm conviction on the entire record that a mistake has been committed. *Moran v. Holman,* 514 P.2d 817, 818 (Alas-

ka 1973). An appellate court must take the view of the evidence most favorable to the party who prevailed below. *G & A Contractors, Inc. v. Alaska Greenhouses, Inc.,* 517 P.2d 1379, 1385 (Alaska 1974).

The superior court's post-trial finding that Hildebrandt was negligent obviates the need to address the pre-trial negligence *per se* ruling.

We also find no merit in Hildebrandt's contention that the superior court erred in denying his motion for summary judgment on the issue of his alleged comparative negligence. It is evident that genuine issues of material fact as to Hildebrandt's negligence precluded a ruling in his favor.

ner of operating a vehicle when approaching an operating emergency vehicle:

> Upon the approach of an authorized emergency vehicle making use of a visual signal meeting the requirements of 13 AAC 04.090 [red light of specified intensity] and audible signals meeting the requirements of 13 AAC 04.210(d) [a siren of specified intensity], or a police vehicle making use of either a visual or audible signal, *the driver of every vehicle proceeding in any direction shall yield the right-of-way by slowing, stopping, changing lanes or pulling to the right-hand edge of the roadway clear of an intersection to await passage of the emergency vehicle.*

(Emphasis added).[5]

### III. *DID THE SUPERIOR COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE CITY ON HILDEBRANDT'S 42 U.S.C. § 1983 CLAIM?*

■ In his amended complaint, Hildebrandt alleged in Count VI that

> [t]he defendant, City of Fairbanks, has a duty to adequately train, instruct and supervise its officers as to its policies pertaining to pursuit driving. The City of Fairbanks has failed in this duty....

> The failure of the City of Fairbanks to adequately train, instruct and supervise its officers regarding pursuit driving constitutes official policy of the City of Fairbanks as it pertains to pursuit driving....

> The City of Fairbanks is liable to Michael C. Hildebrandt for its violation of 42 U.S.C.A. § 1983.

■ Prior to trial the City moved for summary judgment on Count VI of Hildebrandt's § 1983 claim. Hildebrandt opposed the motion and the City responded. Thereafter the superior court granted the City's motion, explaining:

> As to the motion concerning the 42 U.S.C. 1983 claims, the Court does not find that there are any facts in dispute concerning those, therefore that motion is granted....

> I don't find any facts from your side [Hildebrandt's] of the case to show that under the *City of Canton vs. Harris* case that there are those facts based on that standard. I don't find any facts that you've submitted in the record to substantiate that and, therefore, I don't find there is a factual issue. Therefore, as a matter of law, the City is entitled to summary judgment.... [6]

---

5. In support of his claim that he was not comparatively negligent Hildebrandt emphasizes 13 AAC 02.517(f), which requires an emergency vehicle displaying a flashing blue light to stop before proceeding through a red signal. We have difficulty seeing how this argument advances Hildebrandt's cause. We note that 13 AAC 04.100(e) provides: "Police ... vehicles may not use a flashing blue light except simultaneously with a flashing red light as required in sec. 90 of this chapter." Thus it is unclear whether a vehicle displaying both flashing red and blue lights is required to stop before proceeding through a red signal. Chief of Police Cummings was asked:

> Q. So, if someone sees a police car approaching and they observe the blue, then, they're going to observe the red light?
> ....
> A. Yes.
> Q. And do you have an opinion as to whether the reasonable person in the public viewing a red light means that they're supposed to yield to that red light?
> A. Yes, I do, that the public does.

6. A movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Alaska R.Civ.P. 56(c).

On review we determine whether there were genuine issues of material fact and whether the movant was entitled to judgment as a matter of law. *Lord v. Wilcox,* 813 P.2d 656, 658 (Alaska 1991). In carrying out this review we draw all reasonable inferences in favor of the non-moving party and against the movant. *Lord v. Fogcutter Bar,* 813 P.2d 660, 662 (Alaska 1991). Once the movant has met the initial burden of establishing the absence of a genuine issue of material fact the non-movant is required to set forth "specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact[ ] exists." *Bauman v. State, Div. of Family & Youth Servs.,* 768 P.2d 1097, 1099 (Alaska 1989) (quoting *State, Dep't of Highways v. Green,* 586 P.2d 595, 606 n. 32 (Alaska 1978)).

The controlling precedent in regard to Hildebrandt's § 1983 claim is the United States Supreme Court opinion in *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). There the Court was asked whether "a municipality can ever be liable under 42 U.S.C. § 1983 ... for constitutional violations resulting from its failure to train municipal employees." *Id.* at 380, 109 S.Ct. at 1200. In answering in the affirmative the Court stated:

[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.

*Id.* at 388, 109 S.Ct. at 1204. The Court explained:

[The] rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. That much may be true. The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy-makers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 389–90, 109 S.Ct. at 1205 (footnotes omitted).

In support of its motion for summary judgment on Hildebrandt's § 1983 claim, the City relied on the Fairbanks Police Department's adoption of Standard Operating Procedures for pursuit driving roughly eighteen months before the collision in question, as well the deposition testimony of Police Chief Richard Cummings. Emphasis was placed on the following exchange during the Chief's deposition:

Q. (By Mr. Paskvan) Just so I understand this clearly, how is it that you understand that the pursuit driving policy was distributed at the City of Fairbanks Police Department?

A. It was distributed—copies were made to each officer....

Q. So, other than the distribution of this policy, you have no knowledge as to whether the officers are—are or are not following this policy.

A. Except for my knowledge of the fact that there's been other pursuits, and other—other pursuits have complied with policy, and there's been no violations reported of it, I have to assume it—it's complied with....

In opposition to the City's summary judgment motion, Hildebrandt relied on portions of Police Chief Cummings' deposition as well as portions of the depositions of four other Fairbanks Police Department officers. These excerpts suggest a lack of training by the Fairbanks Police Department of its officers in pursuit driving, no supervision of the officers' pursuit driving, and no critiques of individual officers' pursuit driving methods. In reply to Hildebrandt's opposition, the City filed affidavits from Police Chief Cummings as well as the officers whose deposition testimony formed the basis of Hildebrandt's opposition. Each of the four officers' affidavits states that irrespective of their responses in depositions, they have a clear understanding of the department's policy on pursuit driving and they have made every effort to comply with the department's policy. The City

also filed an affidavit by Captain Nielsen, which detailed the pursuit driving training that Fairbanks Police Department officers received.[7]

In our view, the conflict between the deposition testimony relied on by Hildebrandt in his opposition to the summary judgment motion and the City's affidavits in opposition clearly expose the existence of genuine issues of material fact as to (1) whether the City's pursuit driving training was inadequate; (2) whether such inadequate training can justifiably be said to represent City policy; (3) whether, as stated in *City of Canton*, 489 U.S. at 390, 109 S.Ct. at 1205, "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy-makers of the city can reasonably be said to have been deliberately indifferent to the need"; and (4) whether the policy actually caused Hildebrandt's injuries.

We therefore hold that the superior court erred in granting summary judgment as to Hildebrandt's § 1983 claim.[8]

**AFFIRMED** in part, **RESERVED** in part, and **REMANDED** for further proceedings in conformity with this opinion.

---

**7.** Police Chief Cummings explained that "Captain Nielsen would have far more actual knowledge of what actually went on day by day with respect to passing on information, guidance and training to individual officers who become involved in pursuit situations."

**8.** We consider it inappropriate at this time to address Hildebrandt's contentions that a favor-

able judgment on his § 1983 claim removes any issues of apportionment and comparative negligence from the case since "the standard for a § 1983 municipal liability is a higher standard and further, general common law damages as awardable under federal law control." If necessary, resolution of this legal question should follow a full adversarial presentation.