K & L DISTRIBUTORS, INC., Gary Levine, Mark Bennett Levine, Mike Kobylk, and Josef Diamond, executor for the estate of Violett Diamond, Appellants,

v.

**KELLY ELECTRIC, INC., Appellee.**

**Supreme Court No. S–6254.**

Supreme Court of Alaska.

Dec. 15, 1995.

Rehearing Denied Jan. 16, 1996.

---

Roy Longacre, Longacre & Associates, Anchorage, for Appellants.

Phil N. Nash, Kenai, for Appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

RABINOWITZ, Justice.

This appeal requires us to determine whether a real estate lender has a security interest in fixtures annexed to the mortgaged property as a result of a previously recorded deed of trust. Presuming such an interest exists we must also determine whether it survives severance of the fixtures from the real property.

## I. FACTS & PROCEEDINGS

K & L Distributors, Inc.[1] (K & L) sold a piece of real property in Soldotna and the warehouse located thereon to Seafoods From Alaska, Inc. In conjunction with the sale K & L took a deed of trust for the unpaid balance of the purchase price and recorded its interest on June 22, 1988.

**1.** Appellants Gary Levine, Mark Bennett Levine, Mike Kobylk, and Josef Diamond, executor of the estate of Violett Diamond, are listed on the deed of trust as co-beneficiaries with K & L of the property at issue in this case. We refer to appellants collectively as K & L.

The warehouse apparently needed substantial work to operate as a functioning fish processing facility.[2] Seafoods From Alaska hired Kelly Electric, Inc., to supply and install the building's electrical needs. Kelly Electric performed work at the warehouse between late 1988 and the end of the summer of 1991. At that point the management of Seafoods From Alaska realized that they were in financial difficulty. Karl Sederholm, president of Kelly Electric, testified in a deposition that Seafoods From Alaska, Inc.

> didn't know when they would be able to get my bill caught up or continue with their construction and expansion in there, and that if there was anything I could use, that I should go ahead and use it.

Kelly Electric proceeded to remove some of the equipment it had installed, including "some disconnects and some [circuit] breakers and some light fixtures." All of the wiring which Kelly Electric had installed was left intact, and in order to remove the circuit breakers, four nuts were loosened.

Sederholm testified in his deposition that he considered the arrangement to be that they were giving him back some of his material as payment on the account. He also testified that he had no actual knowledge of either K & L's interest in the property or the impending foreclosure.

Following default, K & L noticed and conducted a nonjudicial foreclosure sale pursuant to AS 34.20.070. K & L was the highest bidder at the trustee's sale and took possession of the property on or about October 24, 1991. Upon taking possession of the property, K & L realized that some of the electrical equipment had been removed.

K & L then brought suit against Kelly Electric, alleging that K & L held a beneficial interest in the property because it held a deed of trust, and that Kelly Electric had damaged the previously secured property by removing the electrical equipment.[3] Kelly Electric moved for summary judgment. The superior court granted Kelly Electric's motion. In its order granting summary judgment, the superior court noted:

> The court finds the items removed were fixtures, *Interior Energy Corp. v. Alaska Statebank,* 771 P.2d 1352 (Alaska 1989) and that Kelly Electric was acting at the behest of the owners—Kelly was not a tenant—Plaintiff's recourse is against [Gary Ervin and Roland Schwanke], not Kelly.

K & L now appeals.

## II. STANDARD OF REVIEW

■ We review a grant of summary judgment using our independent judgment. The "court must determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts." *Wright v. State,* 824 P.2d 718, 720 (Alaska 1992). Because the facts of this case are uncontroverted, the dispositive question in this case is one of law. "This court is not bound by a lower court's resolution of questions of law, and has the duty to adopt the rule of law most persuasive in light of precedent, reason and policy." *Department of Health and Social Servs. v. Alaska State Hosp. and Nursing Home Ass'n,* 856 P.2d 755, 758 (Alaska 1993).

## III. DISCUSSION

As is explained below, we think that the superior court correctly ruled that the items removed were fixtures. However, as is also explained below, once the items are determined to be fixtures, Article 9 of the U.C.C. requires that K & L be found to have an interest in them, even when the items are in the hands of Kelly Electric.

---

2. Gary Ervin, one of the principals of Seafoods From Alaska, testified at his deposition that the company planned to convert the warehouse into a "secondary processing facility." When purchased in 1988, the facility had only minimal improvements. Ervin testified that one-third of the warehouse had only a dirt floor, that the ceiling and roughly two-thirds of the walls had insulation and that there were one or two small offices inside. All together, Seafoods From Alaska spent roughly $800,000 renovating the building.

3. The initial complaint also listed Gary D. Ervin and Roland W. Schwanke as defendants in this action. Ervin and Schwanke were principals in Seafoods From Alaska, Inc. K & L eventually dismissed its complaint against Schwanke and Ervin, and they are not parties to this appeal.

The superior court characterized the removed items as fixtures. AS 45.09.313(a)(1) provides that "goods are 'fixtures' when they become so related to particular real estate that an interest in them arises under real estate law." Fixtures are items of personal property that become "so affixed or otherwise so related to real estate that they become part of the real estate." U.C.C. § 9–313 cmt. 1 (1972). AS 45.09.313(b) provides that "[a] security interest under this chapter may be created in goods which are fixtures or may continue in goods which become fixtures, but no security interest exists under this chapter in ordinary building materials incorporated into an improvement on land." Thus, fixtures are to be distinguished from "ordinary building materials which have become an integral part of the real estate and cannot retain their chattel character for purposes of finance." U.C.C. § 9–313 cmt. 3 (1972). Although U.C.C. § 9–313 was drafted to clarify various creditors' relative priorities in fixtures, the threshold determination of whether a particular item is a fixture is not governed by the U.C.C., but rather by pre-existing state property law. *Cain v. Country Club Delicatessen of Saybrook, Inc.*, 25 Conn.Supp. 327, 203 A.2d 441, 446 (1964).[4]

In determining whether a particular item is a fixture, three factors should be considered: "the manner in which the attachment is made, the adaptability of the thing attached to the use to which the realty is applied, and the intention of the one making the attachment." *Hayes v. Alaska Juneau Forest Indus., Inc.*, 748 P.2d 332, 336 (Alaska 1988) (quoting *Montana Elec. Co. v. Northern Valley Mining Co.*, 51 Mont. 266, 153 P. 1017, 1018 (1915)).

Applying this test to the facts of the present case, we agree with the superior court that the items removed by Kelly Electric were fixtures rather than personal property or ordinary building materials. The various items of property removed included industrial lighting and circuit breakers. These items were wired into the warehouse's electrical system but apparently could be removed without damaging the warehouse structure. To remove the breakers, only four bolts had to be unscrewed. The lighting was necessary to prepare the building to be used as a functioning processing facility, and it is therefore reasonable to infer that Seafoods From Alaska intended that the installed devices would be permanent. Given the above, we conclude that, as a matter of law, the removed items were fixtures. *See Equibank v. I.R.S.*, 749 F.2d 1176 (5th Cir.1985) (chandeliers which were physically connected to internal wiring in house were fixtures and therefore subject to mortgage on residence).

Some deeds of trust contain specific after-acquired property clauses, which give the mortgagee[5] a security interest in fixtures or improvements annexed after the mortgage is granted. *See McIlroy Bank & Trust Fayetteville v. Federal Land Bank of St. Louis*, 266 Ark. 481, 585 S.W.2d 947, 948 (1979). In the present case, K & L's deed of trust gives it a security interest in the real property "[t]ogether with the tenements, hereditaments, and appurtenances thereunto belonging, or in anywise appertaining." While on its face this language does not appear to apply to after-acquired property, it has been held that similar language was sufficient to give a mortgagee an interest in a fixture acquired and annexed after the grant of the mortgage. *See Matter of Cliff's Ridge Skiing Corp.* 123 B.R. 753, 762 (Bankr. W.D.Mich.1991) (held that clause reading "real property together with the hereditaments and appurtances thereunto" gave mortgagee security interest in after-acquired fixtures).

Even if the deed language is insufficient to give K & L a security interest in the fixtures, the general common law rule is that "[w]hen a fixture becomes complemental to

---

4. *See also* 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 26–8, at 519 (3d ed. 1988) (stating that U.C.C. § 9–313(1)(a) "is merely an invitation to read the real estate statutes and the local case law on what is and what is not a fixture").

5. The rights of a mortgagee under a mortgage are the same as those of a beneficiary of a deed of trust with respect to the subject matter of this opinion. We therefore use the terms interchangeably.

real property, it becomes ... part of the realty, [and] the fixture becomes part of the security with regard to any existing mortgage. A mortgage covers fixtures even when they are not expressly mentioned in the mortgage." *Id.* at 760 (citations omitted).[6]

■ Kelly Electric, on the other hand, neither signed nor perfected a security agreement to secure the credit it extended to Seafoods From Alaska.[7] Thus, Kelly Electric was no more than an unsecured creditor as to the fixtures.[8] Because the holder of a properly perfected security interest has priority in the security over an unsecured creditor, K & L's interest is superior.

Kelly Electric tried to characterize its removal of the property as a payment on Seafoods From Alaska's account. Although Kelly Electric gave value to Seafoods From Alaska,[9] this does not affect K & L's security interest in the affixed property unless Kelly Electric was a bona fide purchaser. A bona fide purchaser is one who "acquired title without notice, actual or constructive, of another's rights and also must have paid value for the same." *State v. 18,018 Square Feet,*

*More or Less,* 621 P.2d 887, 890 n. 5 (Alaska 1980) (quoting *Sieger v. Standard Oil Co.,* 155 Cal.App.2d 649, 318 P.2d 479, 484 (1957)).

Sederholm testified at his deposition that he had no actual knowledge of either K & L's interest in the property or the impending foreclosure. K & L presented no evidence which would dispute this testimony. Nonetheless, Kelly Electric had constructive notice of K & L's interest. This is because K & L had properly recorded a deed of trust covering the affixed property prior to Kelly's installation and subsequent removal of the fixtures. At the time Kelly Electric removed the items from the realty, it knew they were fixtures and reasonably should have known that they were subject to a previously recorded deed of trust on the property.[10] Thus, we hold that Kelly Electric is not a bona fide purchaser of the property in question, and it therefore took the property subject to K & L's security interest.

## IV. CONCLUSION

Based on the foregoing, we conclude that K & L's security interest in the removed

---

**6.** *See also In re Ladd,* 21 B.R. 579, 582 (Bankr. D.Me.1982) ("It is the general rule that where annexation of chattels to land is such as to make them fixtures, in the absence of an agreement to the contrary, the fixtures are subject to a mortgage.... It has been held that even fixtures attached to realty *subsequent* to a mortgage pass to the mortgagee by affixation."); *Alamosa Nat'l Bank v. San Luis Valley Grain Growers, Inc.,* 756 P.2d 1022, 1027 (Colo.App.1988) ("A real estate deed of trust attaches automatically to buildings and personal property which attaches to the land after execution of the deed of trust in such a way as to take on the character of real estate, *i.e.,* which become fixtures."); *Tifton Corp. v. Decatur Fed. Sav. & Loan Ass'n,* 136 Ga.App. 710, 222 S.E.2d 115, 117 (Ga.App.1975); 1 Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law,* § 9.3, at 811 (1993) ("[t]o the extent that such improvements are considered fixtures[,] ... 'the mortgagee may enjoy the resulting benefit without the need of an after-acquired property clause' ") (quoting 3 Glenn, *Mortgages* 1450 (1943)).

**7.** Had it chosen to do so, Kelly Electric could have secured a priority interest in the installed electrical fixtures as a purchase money lender under U.C.C. § 9–313(4)(a) (codified at AS 45.09.313(d)(1)). This statute states that a purchase money lender which perfects its interest in the fixtures within ten days after the goods become fixtures has priority over a real estate encumbrancer. AS 45.09.313(h) authorizes a se-

cured party to remove fixtures on default subject to specified statutory provisions.

**8.** As for its labor and other materials, Kelly Electric does not claim it has a lien for labor or material furnished, or any other lien arising out of its work on the property. Nor does it appear that it would be entitled to such a lien. AS 34.35.060(c) states that a previously recorded encumbrance on the realty has priority over these types of liens unless the labor or materials provided are "in [the building's] original construction;" *see also Lynch v. McCann,* 478 P.2d 835 (Alaska 1970) (holding that a new addition to a building was not original construction and therefore associated mechanics' liens were subordinate to prior recorded deeds of trust).

**9.** The general definition section of the U.C.C. states that "a person gives 'value' for rights if the person acquires them ... in total or partial satisfaction of a pre-existing claim." AS 45.01.201(45).

**10.** AS 40.17.080(a) states in part:

[F]rom the time a document is recorded in the records of the recording district in which land affected by it is located, the recorded document is constructive notice of the contents of the document to subsequent purchasers and holders of a security interest in the same property or a part of the property.

434

fixtures followed the property into the hands of Kelly Electric. Therefore, we REVERSE AND VACATE the superior court's grant of summary judgment in favor of Kelly Electric. We REMAND this matter to the superior court with directions to reinstate Kelly Electric as the defendant and for such other proceedings as are consistent with this opinion.