**Daniel NEARY, Appellant,**

v.

**Bobbie L. McDONALD, Sr., Bobbie L. McDonald, Jr., Claudette M. McDonald, Appellees.**

No. S–7467.

Supreme Court of Alaska.

April 17, 1998.

Roger E. Holl, Anchorage, for Appellant.

Jonathon A. Katcher, Pope & Katcher, Anchorage, for Appellees, Bobbie L. McDonald, Sr. and Claudette M. McDonald.

No appearance for Bobbie L. McDonald, Jr.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

Daniel Neary sued Bobbie L. McDonald, Sr. and Claudette McDonald on a negligent entrustment theory after a vehicle driven by their adult son, Bobbie L. McDonald, Jr., collided with Neary's motorcycle. The superior court found that there were no genuine issues of material fact and granted summary judgment to the McDonald parents. We affirm.

### II. FACTS AND PROCEEDINGS

Bobbie L. McDonald, Jr. (Bobbie Jr.) bought a 1987 Nissan Pathfinder on June 2, 1994, with a cash payment of $7,490. He was then eighteen years old. He was a carpenter

making about $7 per hour and lived in a trailer park. He had moved out of his parents' home in November 1993. His parents, Bobbie L. McDonald, Sr. (Bobbie Sr.) and Claudette M. McDonald (the McDonald parents), later denied by affidavit being involved in the purchase "in any way."

Bobbie Jr. registered the car in the name of "Bobbie L. McDonald" or "Claudette M. McDonald." On the application for title and registration, Bobbie Jr. did not write "Jr." in the suffix space of the "Ownership" name field; he listed his parents' address in the address field. Both parents affied it was Bobbie Jr.'s signature on the application. The application bears Bobbie Jr.'s date of birth and a social security number which was identical to Bobbie Jr.'s except for the last digit. His parents attributed the difference in that digit to a typographical error. His social security number and the number listed on the application are not at all similar to his father's. The application lists no driver's license number for the vehicle owner.

Bobbie Jr.'s mother affied that he did not notify her that he had put her name on the registration. She learned about her co-ownership status when the Division of Motor Vehicles (DMV) mailed a copy of the vehicle's registration to her in July 1994. Claudette McDonald attested that when she saw that the registration listed her as an owner, she immediately called her son and asked him to take her name off the title. Bobbie Jr. later told his mother that he could not change the title because there was a problem with the vehicle's emissions.

On July 30, 1994, Bobbie Jr. pulled out onto a busy street in the Pathfinder and struck a motorcycle being operated by Daniel Neary. The motorcycle was heavily damaged and came to rest more than thirty-two feet from the point of impact. Neary landed some twenty-six feet beyond his motorcycle and was extensively injured. His foot was later amputated, and he suffered a heart attack in the hospital.

Bobbie Jr. was unlicensed and uninsured. His parents carried no automobile insurance for the Pathfinder. Bobbie Jr. had a history of driving mishaps and disciplinary problems. He had at least one previous vehicle accident, according to his mother. He had several prior encounters with police following incidents of theft, leaving the scene of an accident, and other mischief.

Neary filed a complaint against all three McDonalds, alleging, in part, that the McDonald parents negligently entrusted the vehicle to their son. The McDonald parents moved for summary judgment, arguing that there was no evidence showing that they had supplied the vehicle to Bobbie Jr., or that they had control over their adult son or his use of the vehicle. They supported their motion with their affidavits. Neary cross-moved for partial summary judgment against the parents on the issue of liability for negligent entrustment.

The superior court denied Neary's motion and granted the parents' motion. The court found that there were no genuine issues of material fact as to the ownership or financing of Bobbie Jr.'s Pathfinder and entered summary judgment in favor of the parents.

Neary appeals.

## III. DISCUSSION

### A. Did the Parents Negligently Entrust the Vehicle to Their Son?

The main issue is whether the parents negligently entrusted the Pathfinder to their son. The superior court found that, absent evidence that Bobbie Jr.'s vehicle was supplied by his parents, the parents could not be liable for negligent entrustment. It ruled that Neary had not established the existence of genuine issues of material fact as to the ownership or financing of the vehicle: "There's simply no evidence that the automobile here was supplied by the parents to the son."

■ Neary argues that he was entitled to summary judgment, or that, at the least, genuine and material fact disputes precluded summary judgment for the parents on the negligent entrustment claim.[1]

---

1. We review a grant of summary judgment using our independent judgment. *K & L Distribs., Inc.*

*v. Kelly Elec., Inc.*, 908 P.2d 429, 431 (Alaska 1996). Summary judgment is to be granted only

■ As a general rule, the owner or other person in control of a vehicle and responsible for its use who is negligent in knowingly supplying, entrusting, permitting or lending it to an incompetent or habitually careless driver is liable for negligent entrustment. *See, e.g., McCart v. Muir,* 230 Kan. 618, 641 P.2d 384, 387 (1982); *Bahm v. Dormanen,* 168 Mont. 408, 543 P.2d 379, 381 (1975).

We have recognized the common law tort of negligent entrustment in two cases involving entrustment of vehicles. *See Providence Wash. Ins. Co. of Alaska v. McGee,* 764 P.2d 712, 715–16 (Alaska 1988); *Flieger v. Barcia,* 674 P.2d 299, 301 (Alaska 1983). However, neither case discussed the tort of negligent entrustment in much depth, and neither case involved factual circumstances similar to the case at bar.

In *Providence* we affirmed a grant of summary judgment finding that the defendant was not liable for negligent entrustment. *Providence Wash. Ins. Co.,* 764 P.2d at 715–16. The defendant employer had provided a truck for its employee to pick up work materials. *Id.* at 712. We ruled that the employer was not liable for negligent entrustment in the absence of evidence that the employee's supervisors had any reason to suspect that the plaintiff employee drove while intoxicated. *Id.* at 715–16.

In *Flieger* we reversed the summary judgment entered for the defendant sellers on the issue of negligent entrustment. *Flieger,* 674 P.2d at 301–02. The plaintiffs had been injured as a result of a collision with a truck. *Id.* at 300. The defendants had sold the truck to the buyer nine days before the accident, and the new title had not yet been issued. *Id.* at 300–01. We found that there was a substantial fact dispute about whether the sellers were negligent in giving possession of the truck to the buyer. *Id.* at 301. We also found that the issue of ownership of

the truck was irrelevant to the issue of negligence. *Id.*

Most states have patterned their versions of the negligent entrustment doctrine after two sections of the *Restatement (Second) of Torts.* Section 308 states:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

*Restatement (Second) of Torts* § 308 (1965).

*Restatement (Second) of Torts* § 390 is a special application of the rule stated in § 308. *Restatement (Second) of Torts* § 390 cmt. b (1965). Section 390 states:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Restatement (Second) of Torts* § 390.

As so described, negligent entrustment liability cannot be established unless the defendant had sufficient control of the vehicle, and negligently supplied it to an incompetent third party.

### B. Did the Parents Have Sufficient Control of the Vehicle?

Neary argues that because Claudette McDonald was a co-owner of the vehicle and knew of her son's poor driving record, she should be found liable for negligently entrusting the vehicle to Bobbie Jr. Citing AS 28.10.261,[2] Neary asserts that co-ownership

---

when the record indicates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Alaska R. Civ. P. 56(c); *Cozzen v. Municipality of Anchorage,* 907 P.2d 473, 475 (Alaska 1995). In considering a motion for summary judgment, both the trial court and the reviewing court must draw all reasonable inferences from

the evidence in favor of the non-moving party. *Estate of Arrowwood ex rel. Loeb v. State,* 894 P.2d 642, 644 n. 2 (Alaska 1995).

**2.** AS 28.10.261 states, in part:

(a) In a civil or criminal proceeding, when the title or right to possession of a vehicle is

and the accompanying right to control should be considered established because Claudette was listed as co-owner on the certificate of title. Neary also argues that because the application form lists Bobbie as owner, does not insert "Jr." in the suffix space, and bears the parents' address, there is a genuine fact dispute whether Bobbie Sr. and Claudette are the co-owners of the Pathfinder.

The parents reply that evidence establishes that Claudette was not a co-owner of the vehicle, rebutting the title's prima facie evidence of ownership. *See Weaver v. O'Meara Motor Co.*, 452 P.2d 87, 90 (Alaska 1969) (allowing oral testimony as to ownership and right to possession to rebut certificate of title). In addition, the parents assert that courts disfavor the rigid conception of ownership based upon certificates of title.

The superior court found no genuine issue of material fact regarding ownership. Although the title documents permitted a reasonable inference that Claudette had an ownership interest in the vehicle, the evidence as a whole nonetheless did not permit an inference that the parents had sufficient control over the vehicle to prevent Bobbie Jr. from operating it and colliding with Neary.

■■■ To be liable for negligent entrustment, the defendant must have a right to control or possess the vehicle. *Lopez v. Langer*, 114 Idaho 873, 761 P.2d 1225, 1227 (1988) (finding that the title owner did not have sufficient control over the possessor of the vehicle for liability purposes). A right to control does not always mean ownership, but generally means that the defendant must have a greater right of possession or control than the "entrustee." *See, e.g., Zedella v. Gibson*, 165 Ill.2d 181, 209 Ill.Dec. 27, 30–31, 650 N.E.2d 1000, 1003–04 (1995) (stating that "if the [defendant] does not have an exclusive or superior right of control, no entrustment of the property can occur"). The defendant

must have the power to permit or prohibit the third party from using the vehicle. *See Neale v. Wright*, 322 Md. 8, 585 A.2d 196, 201 (1991). The *Neale* court explained:

> [I]n order for [defendant] to ... be liable under a negligent entrustment theory, [defendant] had to have the power to permit or prohibit [entrustee] from using the vehicle. That power could emanate from a superior right to control the operation of the car, or from a special relationship between the "entrustor" and the driver, such as a parent-child relationship.

*Id.* 585 A.2d at 201 (citations omitted).

■ Neary produced no evidence creating a genuine issue of material fact about whether the parents had a superior right of control over the vehicle. *See Hildebrandt v. City of Fairbanks*, 863 P.2d 240, 244 n. 6 (Alaska 1993) (explaining that party opposing summary judgment motion supported by evidence must demonstrate that a material issue of fact exists). In their affidavits the parents asserted that they did not assist in or even know about Bobbie Jr.'s purchase of the vehicle until after it took place. Claudette attested that she found out she was listed as a co-owner shortly before the accident, and although she tried to remove her name from the title, she could not. Bobbie Sr. attested that he did not know until after the accident that Claudette was listed on the title as a co-owner. Both affied they did not know until they were served with the complaint that anyone would consider Bobbie Sr. to have been an owner of the vehicle.

In addition, there was no evidence permitting reasonable persons to infer that Bobbie Jr.'s parents in fact had control over their eighteen-year-old son such that they could have prevented him from driving the vehicle.[3] *See Peterson v. Halsted*, 829 P.2d 373, 379–80 (Colo.1992) (holding that co-owner father had

---

involved, the record of registrations and certificates of title as they appear in the files and records of the department are prima facie evidence of the ownership or right to possession. Proof of ownership or right to possession of a vehicle shall be made by a copy of the record certified by the department or by an original certificate of registration or title issued by the department.

3. The age of majority is eighteen. *See* AS 25.20.010, which states:

> A person is considered to have arrived at majority at the age of 18, and thereafter has control of the person's own actions and business and has all the rights and is subject to all the liabilities of citizens of full age, except as otherwise provided by statute.

no control over his twenty-five-year-old daughter's car for negligent entrustment purposes); *compare McCart,* 641 P.2d at 388 (concluding that co-owner father had control over his seventeen-year-old son's car).

Some courts have held that co-owners have equal rights of control over a vehicle. *See Zedella,* 209 Ill.Dec. at 31, 650 N.E.2d at 1004 ("[O]ne co-owner does not have a superior right of control over a vehicle compared to another co-owner."); *Neale,* 585 A.2d at 201. Nonetheless, assuming Neary is correct in arguing that Claudette was a co-owner of the Pathfinder, that status alone would not have given her sufficient control over the vehicle for negligent entrustment liability because there is no evidence reasonably permitting an inference that she could have lawfully or practically prevented Bobbie Jr. from operating the Pathfinder.

Neary argues that Claudette could have asserted her rights in the vehicle. He suggests that Claudette could have asked Bobbie Jr. for the keys, asked him to stop driving, asked him to park the vehicle, had the vehicle towed from Bobbie Jr.'s residence, or transferred his ownership in the Pathfinder to her or someone else.

To assume she could have done such things assumes that she had what she did not have: any control over the vehicle or her son. She unsuccessfully asked him to take her name off the title. According to the affidavit of a representative of DMV, a person in Claudette's position could not remove her name from the title without her son's "cooperation and active participation." There is no evidence that she had any ability or authority to take his name off the title, take the keys from him, have the vehicle towed, or sell the vehicle to a third person. Even if Claudette was a co-owner, she would not have had the authority to take those measures. *See Neale,* 585 A.2d at 201 (stating that, when two spouses own a car, "neither ordinarily has the power to permit or prohibit the other from using the vehicle").

■ The dissent suggests that a genuine issue of material fact remains as to Claudette's possible superior control over the vehicle. Dissent at 18–19. The dissent reasons that Claudette, as the only licensed record owner, "had a clear legal right to prevent the car's illegal use by her son and an obvious interest in doing so." Dissent at 19. We respectfully disagree. Assuming that the application, registration, and title created a genuine issue of material fact about whether Claudette was a co-owner with Bobbie Jr., there is no evidence that she had any authority to prevent him from possessing the keys and the vehicle on the date of the accident. The dissent appears to assume that she could have prevented him from driving, but it does not explain how one co-owner can lawfully prevent another co-owner from possessing or driving the vehicle. Nor does it explain how a person who disclaims ownership and whose ostensible co-ownership derives only from the title documents she disputes has a superior right of control sufficient to take the vehicle from the person listed on the documents as co-owner. It was not illegal for Bobbie Jr. to possess the vehicle or the keys. Informing the police of incipient vehicular violations (operating without a license or insurance) or swearing out a misdemeanor complaint would not have given Claudette possession or deprived Bobbie Jr. of access. *See Neale,* 585 A.2d at 200–02 (explaining that insured wife had no power to prohibit her uninsured husband from driving the car that the couple co-owned, even though liability insurance was required by state law).

■ Neary refers to Claudette's deposition, in which she testified that Bobbie Jr. had previously returned cars either spontaneously or when asked to do so, and that she had taken another vehicle away from him. Neary argues that this is evidence that she could have controlled use of the Pathfinder. This evidence, however, pertained to a Plymouth the parents undisputably owned (and which Bobbie Jr. borrowed without permission and apparently returned spontaneously), and to another car he had purchased and driven without his parents' permission. He had hidden that car and parked it in a nearby neighborhood. Bobbie Jr. was not yet eighteen and was still living at home when those events took place. He was eighteen when he bought the Pathfinder, was no longer living at home, was difficult to contact, made only

brief visits to his parents' home, did not spend the night there (except on July 30, after the accident), and did not park the Pathfinder there.

The evidence cited by Neary is insufficient to raise a genuine fact dispute about Claudette's ability to control the Pathfinder or her son's use of it.

■ Attempting to show that the parents had a superior right to control the Pathfinder, Neary argues that a jury could find that both parents were actually the titleholders. The application for title and registration lists the owners as "Bobbie L. McDonald" and "Claudette M. McDonald." The application lists Bobbie Jr.'s date of birth and social security number (although the last digit of that nine-digit number is incorrect); it does not contain Bobbie Sr.'s birth date or social security number. The listed birthday is not remotely similar to Bobbie Sr.'s; the listed social security number contains only one number, the first, in common with Bobbie Sr.'s. However, the application gives Bobbie Sr.'s home address as the owner's mailing address.

Neary's argument fails. The application, registration, and title strongly indicate that Bobbie Jr., not Bobbie Sr., was the owner because the identifying data—the date of birth and the social security number—were those of Bobbie Jr., not Bobbie Sr. The parents also affied that they recognized their son's signature on the title application. Neary does not explain why the application would bear Bobbie Jr.'s date of birth, social security number, and signature if Bobbie Sr. were the true owner. The only indication on the application that Bobbie Sr. was an owner—the parents' home address—is insufficient to give rise to a permissible inference that Bobbie Sr. was an owner.

Because Bobbie Sr. was not even a co-owner, there is no theoretical basis for finding that he could have prevented Bobbie Jr. from driving the Pathfinder. Because Claudette was at most a co-owner with her son, and because co-owners have equal rights of control, she could not have lawfully prevented her son from driving the Pathfinder. Absent a superior right to control their son's use of the vehicle, neither parent could be liable for negligent entrustment.

### C. *Did the Parents Supply the Vehicle?*

Neary argues that neither Bobbie Jr. nor his parents have explained the financing of the vehicle. Neary asserts that Bobbie Jr.'s parents likely contributed to the purchase, and therefore may be liable for supplying the Pathfinder to Bobbie Jr. Neary also contends that the parents were negligent in failing to insure the vehicle.

The parents argue that they did not finance their son's purchase of the Pathfinder. They also argue that, never having had possession of the Pathfinder, they never could have given its possession or entrusted it to their son. They explain that they could not have insured the vehicle for Bobbie Jr.'s use.

■ Negligent supply or transfer is an essential element of negligent entrustment. In a typical case, a parent, who knew or had reason to know that the donee's use of the vehicle could reasonably be expected to cause injury, provides a vehicle for the donee's use. *Kahlenberg v. Goldstein,* 290 Md. 477, 431 A.2d 76 (1981) (holding that the donor father had negligently entrusted the automobile to his son). If the parent only partially assists in the purchase of a car for a child, who is an adult, the courts are less likely to find the parent liable. *See Zedella,* 209 Ill.Dec. at 28–29, 650 N.E.2d at 1001–02 (holding co-owner father not liable, though he cosigned loan and occasionally gave money to twenty-three-year-old son for car and insurance payments). The only evidence—the parents' affidavits and the title papers—is consistent with their arguments, and would not permit a reasonable inference that they supplied the vehicle to their son.

■ Neary argues that the parents must have negligently supplied the vehicle to Bobbie Jr., given that Bobbie Jr. did not earn enough money to pay for it himself. No evidence traced the cash used to buy the Pathfinder. The parents provided some of their bank records, which show no withdrawals large enough to pay for the Pathfinder. Both parents unequivocally stated in affida-

vits that they did not help their son buy the Pathfinder.

The party opposing summary judgment "is required ... to set forth 'specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact ... exists.' " *Hildebrandt,* 863 P.2d at 245 n. 6 (citations omitted). Neary did not adduce specific facts tending to show that the parents purchased the Pathfinder for their son or otherwise provided it for his use. Neary therefore did not demonstrate any genuine issue of material fact regarding the financing or supply of the Pathfinder.

Neary also claims that the parents negligently failed to insure the vehicle. It is not apparent how this assertion relates to a negligent entrustment claim. Other than one sentence in the brief, Neary provides no further discussion of the issue. This theory is insufficiently briefed for our consideration. *See, e.g., Adamson v. University of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991).

> D. *Can the Issue of Negligent Entrustment Be Decided on Summary Judgment?*

Neary argues that negligent entrustment issues cannot be decided on summary judgment, because negligence issues normally present fact questions.

■ As a general rule, issues of negligence are not appropriate for summary judgment. *See Maddox v. River & Sea Marine, Inc.,* 925 P.2d 1033, 1035, 1040 (Alaska 1996) (reversing summary judgment, finding fact issues remained regarding negligence). The rationale for this rule is

> the elusive nature of the concept of negligence, the determination of the existence of which requires the forming of a judgment as to the reasonableness of the conduct of the parties in the light of all the circumstances of the case. If reasonable minds could draw different inferences and reach different conclusions from the facts the issue must be reserved for trial.

*Webb v. City of Sitka,* 561 P.2d 731, 735 (Alaska 1977) (citations omitted).

■ This case differs from the typical negligence case because the legal questions presented here do not turn on whether the parents acted reasonably. Absent any evidence that they had any ability to control use of the vehicle, or that they supplied it to their son, a fact finder need never consider the reasonableness of their conduct under a negligent entrustment theory. Absent a genuine fact dispute about the control and supply elements, the claim can be decided as a matter of law. The superior court did not err in entering summary judgment on the negligent entrustment claim.

## IV. CONCLUSION

Because there was no evidence creating a genuine issue of material fact about the parents' ability to control the Pathfinder or about whether they supplied it to their son, we AFFIRM the summary judgment.

BRYNER, Justice, dissenting in part.

I disagree with the court insofar as it concludes that there is no evidence creating a genuine issue of material fact as to Claudette McDonald's negligent entrustment of the Nissan Pathfinder to her son, Bobbie McDonald, Jr.

There was sufficient evidence here to create a genuine issue of fact as to Claudette McDonald's right to control the car: under AS 28.10.261(a), her name on the car's registration and certificate of title are "prima facie evidence of [her] ownership or right to possession." In granting summary judgment against Neary, the trial court concluded that the McDonalds' unanswered affidavits professing their lack of actual ownership and right to possession rebutted this presumption and left no jury question. This conclusion is simply incorrect. Under Evidence Rule 301, evidence that rebuts a statutory presumption such as the one established in subsection 261(a) actually creates a jury issue as to the presumed fact—a fact that would otherwise be conclusively established by the presumption: "When the burden of producing evidence to meet a presumption is satisfied, the court must instruct the jury that it may, but is not required to, infer the existence of the

presumed fact from the proved fact[.]" A.R.E. 301(a).

This court skirts the point by finding that there is "no evidence creating a genuine issue of material fact about whether [Claudette] had a *superior* right of control over the vehicle." Op. at 1209 (emphasis added). The court reasons that, as a mere co-owner with her son, Claudette's right of control was at most equal to Bobbie Jr.'s. Op. at 1211.

In my view, however, a genuine issue as to superior control arises here from undisputed record evidence that Bobbie Jr. is not and never has been a licensed driver. Because Bobbie Jr. had no license to drive, his right to possess and control his new car was severely limited; Claudette admitted that she knew of his unlicensed status. Reading the record in the light most favorable to Neary, it supports a finding that Claudette was a licensed driver. As a licensed driver, Claudette was subject to no similar limitations. As between the two record owners, then, Claudette was the only one who was entitled to drive the car; in her capacity as co-owner, she also had a clear legal right to prevent the car's illegal use by her son and an obvious interest in doing so.

Given these circumstances, if the jury found Claudette to be a genuine co-owner—a question of fact placed in genuine dispute for summary judgment purposes by the statutory presumption stemming from Claudette's name on the Pathfinder's registration—it could also reasonably find that she had the right and the ability to control the car herself and to prevent Bobbie Jr. from using it. Thus, when viewed in the light most favorable to Neary, the record contains sufficient evidence to raise a genuine issue of material fact as to Claudette's superior right of control and to support a finding of liability against her.

I would accordingly reverse the summary judgment order as to Claudette McDonald.